(Nos. 3146, 3147, 3148, 3149, consolidated—

WABASH TELEPHONE COMPANY, No. 3146, ILLINOIS VALLEY TELE-PHONE COMPANY, No. 3147, ILLINOIS TELEPHONE COMPANY, No. 3148, AUTOMATIC HOME TELEPHONE COMPANY, No. 3149, Claimants, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed September 14, 1939.*

HOPKINS, SUTTER, HALLS & DEWOLFE, for claimants.

JOHN E. CASSIDY, Attorney General; MURRAY F. MILNE, Assistant Attorney General, for respondent.

MR. CHIEF JUSTICE HOLLERICH delivered the opinion of the court:

Each and all of the above entitled cases are based upon similar states of fact, and involve the same principles of law, and upon motion of the respective claimants, have been consolidated for the purposes of this hearing.

The claimants seek to recover the respective amounts paid by them between July 1st, 1935 and January 14th, 1937, as taxes on their gross receipts from the transmission of telephone messages, pursuant to the provisions of The Public Utility Tax Act of 1935.    (Smith-Hurd Illinois Revised Statutes, 1935, Chap. 120, Sec. 440 et seq.)

Such Act imposed a tax upon each public utility at the rate of three per cent (3%) of the gross receipts of such utility from the conduct of the business of transmitting telephone messages, and of distributing, supplying, furnishing or selling water, gas or electricity to persons for domestic or commercial consumption, and not for resale.

Section One (1) of the Act defined "gross receipts" as "the consideration received for the transmission of telegraph or telephone messages, or for water, gas or electricity supplied or furnished to persons for domestic or commercial consumption and not for resale," and defined a "public utility" as "a person engaged in the business of transmitting telegraph or telephone messages, or of distributing, supplying, furnishing or selling water, gas or electricity for domestic or commercial consumption and not for resale."

Section Six (6) of the Act provided as follows:

"If it shall appear that an amount of tax, penalty or interest has been paid which was not due under the provisions of this Act, whether as the result of a mistake of fact or an error of law, then such amount shall be credited against any tax due, or to become due, under this Act from the public utility which made the erroneous payment, or such amount shall be refunded to such public utility by the department."

The Department of Finance of the respondent ruled that persons furnishing water, gas or electricity should be taxed only upon receipts derived from domestic or commercial consumers, but that persons engaged in the business of transmitting telegraph or telephone messages should be taxed upon receipts from other than domestic or commercial users.

In making payment of the tax, the several claimants stated that the payments were made under protest, but they failed to avail themselves of the remedy by injunction provided by an Act entitled "An Act in Relation to the Payment and Disposition of Moneys Received For or on Behalf of the State," approved June 9, 1911, as amended. Illinois Revised Statutes, 1937, Bar Assn. Edition, Chap. 127, Par. 170 et seq.

The Wabash Telephone Company paid the total sum of $20,034.41, of which $1,779.05 was the tax on receipts from other than domestic or commercial purposes.

The Illinois Valley Telephone Company paid the total sum of $8,778.01, of which $729.69 was the tax on receipts from other than domestic or commercial purposes.

The Illinois Telephone Company paid the total sum of $10,227.96, of which $243.43 was the tax on receipts from other than domestic or commercial purposes.

The Automatic Home Telephone Company paid the total sum of $2,480.84, of which $302.34 was the tax on receipts from other than domestic or commercial purposes.

On October 27th, 1936 the Supreme Court of this State decided in the case of *Illinois Bell Telephone Co.* vs. *Ames,* 364 Ill. 362, that a company engaged in the business of transmitting telegraph and telephone messages in the State of Illinois should be taxed only upon receipts derived from domestic and commercial services or uses.

Thereafter the Department of Finance of the respondent, pursuant to such decision of the Supreme Court, issued to each of the claimants herein, a "notice of credit," stating that the account of such claimant had been credited in the amount set forth in such notice, and that said credit was due to the decision of the Illinois Supreme Court in the Illinois Bell Telephone Company case. The several amounts due the respective claimants in accordance with the aforementioned notices of credit, were as follows, to-wit:

Wabash Telephone Company.................................................$1,779.05
Illinois Valley Telephone Company................................. 729.69
Illinois Telephone Company........................................ 243.43
Automatic Home Telephone Company............................. 302.34

On February 12th, 1937 the Supreme Court of this State, in the case of *City of Chicago* vs. *Ames,* 365 Ill. 529, held that the Public Utility Tax Act of 1935 was illegal and unconstitutional, in that it set up a classification for which there was no reasonable basis.

Thereafter the claimants filed their several complaints herein for the recovery of the total tax paid by them as hereinbefore set forth.

The complaint in each case is substantially the same, and consists of two counts.

The first count seeks the recovery of the total amount of the tax paid, and is based upon the following grounds, to-wit:

a) That the several payments were not voluntarily made, but were made under duress, and claimant is therefore entitled to the return thereof.

b) That the respondent is the recipient of monies to which it is not entitled in equity and good conscience, and the same should therefore be refunded.

c) That each of the payments were made as the result of a mistake of fact and an error of law, and that under the

provisions of the aforementioned Section Six (6) of the Public Utility Tax Act, the same should be refunded.

The second count seeks the recovery of the several amounts which were paid as a tax upon gross receipts from the sale of services for uses other than domestic or commercial consumption, that is to say, the several amounts for which a notice of credit was issued by the Department of Finance as hereinbefore set forth.

Subsequent to the filing of the complaint herein, the Department of Finance of the respondent refunded to the several claimants the respective amounts due them in accordance with the aforementioned notices of credit, and on August 15th, 1939, on motion of the several claimants, Count II of their several complaints was dismissed without prejudice to the rights of such claimants under Count I of their respective complaints.

The several cases now come before the court upon the allegations of Count I of the respective complaints, and the motion of the Attorney General to dismiss;—the statements of fact, as set forth in the complaint, being taken as true for the purposes of such motion.

The contentions of the claimants will be considered in the order above set forth:

## I.

That the several payments were not voluntarily made, but were made under duress.

The question as to when assessments or taxes are considered to have been voluntarily paid has come before this court in numerous cases. In the case of *Butler Co.* vs. *State,* 9 C. C. R. 503, the question was exhaustively considered, and the authorities thereon were reviewed by the court. In that case we held, in substance, that:

a)  The terms "voluntary" and "involuntary," when used with reference to the payment of taxes, are not applied in their ordinary sense.

b)  If a tax is paid voluntarily and with a knowledge of the facts, it cannot be recovered.

c)  If the taxpayer has an adequate remedy in the courts of general jurisdiction, and fails to take advantage thereof, he cannot be permitted to say that the tax was paid involuntarily or under duress.

The decision in the Butler case has been followed by this court in numerous cases since decided.

In the present case the claimants had an adequate remedy under the provisions of·an Act entitled "An Act in Relation to the Payment and Disposition of Moneys Received For or on Behalf of the State" (Ill. Rev. Stat. 1937, Chap. 127, Sec. 170 et seq.), paragraph 2-A of which provides as follows:

"It shall be the duty of every officer, * * * to notify the State Treasurer as to money paid to such officer, under protest, and the Treasurer shall place such money in a special fund to be known as the protest fund. At the expiration of thirty days from the date of payment the money shall be transferred from the protest fund to the appropriate fund in, which it would have been placed had there been payment without protest unless the party making such payment shall have filed a complaint in chancery and secured within such thirty days a temporary injunction restraining the making of such transfer, in which case such payment and such other payments as the court may direct subsequently made under protest by the same person, the transfer of which is restrained by such temporary injunction, shall be held in the protest fund until the final order or decree of the court."

In the case of *Ward & Co.* vs. *Stratton*, 342 Ill. 472, the plaintiff filed a bill in chancery against the Secretary of State to require him to hold $19,971.50 alleged to have been illegally exacted from said plaintiff as an additional fee under the General Corporation Act, until the court could determine whether said sum was due the State. A demurrer was sustained to the bill and the case was dismissed.for want of equity. In affirming the decision of the Circuit Court, our Supreme Court (page 476) said:

"In determining whether the demurrer was properly sustained to this bill it will not be necessary to determine whether the fee of $55,701 was or was not legally assessed. Section 35 of Chapter 127b (Cahill's Stat., 1929, p. 2469), in substance provides that all officers of the State shall hold for thirty days all money received for or on behalf of the State under protest, and on the expiration of such period deposit the same with the State Treasurer, unless the party making such payment shall within such period file a bill in chancery and secure a temporary injunction restraining the making of such deposit, in which case such payment shall be held until the final order or decree of the court. This statute provides a method by which money paid under protest to a State official may be recovered. It affords a complete and adequate remedy in a court of equity where all questions can be fully and speedily determined. It is the only statute on this subject to which our attention has been called. Appellant did not see fit to take advantage of the provisions of this statute and no reason or excuse is alleged in the bill for such failure."

Although claimants in the present case allege that the payments in question were made under protest, they do not allege any facts showing that such payments were made under legal compulsion or duress, or were made as the result of any fraud or deceit.

Furthermore, claimants failed to take advantage of the remedy provided by the last mentioned Act of the General Assembly, and under the repeated decisions of this court we must hold that the tax so paid by the claimants was paid voluntarily.

## II.

It is next contended by the claimants that the respondent is the recipient of monies to which it is not entitled in equity and good conscience, and that the same should therefore be refunded.

Apparently this contention is based upon Section 6, Paragraph 4 of the Court of Claims Act which provides that this court shall have jurisdiction "to hear and determine all claims and demands, legal and equitable, liquidated and unliquidated, ex contractu and ex-delicto, which the State as a sovereign commonwealth, should, in equity and good conscience, discharge and pay."

The question as to the proper construction of the foregoing paragraph was considered by this court in the case of *Crabtree* vs. *State*, 7 C. C. R. 207, in which case, after a careful consideration of the authorities on the question, we held that the foregoing paragraph merely defines the jurisdiction of the court and does not create a new liability against the State, nor increase or enlarge any existing liability; that the jurisdiction of this court is limited to claims in respect of which the claimant would be entitled to redress against the State either at law or in equity, if the State were suable; and that unless the claimant can bring himself within the provisions of a law giving him the right to an award, he cannot invoke the principles of equity and good conscience to secure such an award.

The decision in the Crabtree case has been followed in numerous subsequent decisions of this court. *Pelli* vs. *State*, 8 C. C. R. 324; *Ryan* vs. *State*, 8 C. C. R. 361; *Rehman* vs. *State*, 8 C. C. R. 556; *Simpson* vs. *State*, 9 C. C. R. 321; *Finney* vs. *State*, 9 C. C. R. 327; *Titone* vs. *State*, 9 C. C. R. 389; *Crank* vs. *State*, 9 C. C. R. 379.

Under the facts set forth in the complaint, and the law as set forth under claimants' first contention, the claimants would not be in position to maintain an action at law or in equity against the State if the State were suable, and consequently they have no right to an award in this case.

## III.

It is next contended by the claimants that the payments in question were made as the result of a mistake of fact and an error of law, and that under the provisions of the aforementioned Section 6 of the Public Utility Tax Act, such payments should be refunded.

The Attorney General contends that inasmuch as the Public Utility Tax Act has been declared unconstitutional, Section 6 of such Act can have no force or effect, and consequently claimants have no right to recover thereunder.

The claimants contend that the Public Utility Tax Act is severable; that the objections urged to the constitutionality of the Act do not apply to said Section 6, and that they are therefore entitled to the benefit of the provisions of said section.

In the view we take of the case, it is not necessary to consider the contention thus raised. Assuming for the purposes of this motion only, and not deciding, that in a proper case, the taxpayer might have the benefit of the provisions of such Section 6, yet under the facts in the present case, such Section can have no application.

It will be noted that the provisions of Section 6, by the express terms thereof, apply only to cases in which the taxes paid, *were not due* under the provisions of the Public Utility Tax Act. In each of the instant cases, the taxes paid were *due* under the provisions of the Public Utility Tax Act, and therefore the provisions of the said Section 6 could have no application to such payments, even if the constitutionality of the Act had been upheld.

Furthermore, the question involved in the present cases was squarely before this court in the case of *City of Oglesby* vs. *State,* No. 3097, decided at the November, 1938, term of this court. The facts in that case were substantially the same as in the present case, and the same questions of law were involved. The case was carefully considered by the court, and we there held that the payments in question were volun-

tarily made; and that the provisions of Section 6 of the Public Utility Tax Act had no application to the payments made by the claimant, and we therefore denied an award.

What we said in that case applies with equal force to the contentions made in the present case.

The decision of this court in the City of Oglesby case was followed in the case of *Village of Deerfield* vs. *State,* No. 3223, decided at the May, 1939, term of this court.

For the reasons set forth in the City of Oglesby case, as well as the reasons herein set forth, the motion of the Attorney General to dismiss must be allowed.

Motion to dismiss allowed. Case dismissed.