THE BOARD OF EDUCATION OF SCHOOL DISTRICT NO. 41, Appellee, *vs.* LEWIS V. MORGAN, County Superintendent of Schools, Appellant.

*Opinion filed February 17, 1925.*

1. STATUTES—*context of statute may be referred to, to determine meaning of particular words.* Words in a statute are presumed to be used in their ordinary meaning, but in case of ambiguity it is proper to consider the context to determine the meaning in which the words are used.

2. SAME—*a word is presumed to have same meaning throughout statute.* Where a word has been used more than once in a statute it will be presumed to have been used with the same meaning throughout unless there is something to show a different meaning was intended.

3. CONSTITUTIONAL LAW—*construction of the provision of section 13 of article 4 that no act shall take effect until July 1 after its "passage."* The provision of section 13 of article 4 of the constitution that no act of the General Assembly shall take effect until the first day of July next after its passage means after the passage of the act by the two houses of the General Assembly and not after its approval by the Governor, and when the act is not signed by the Governor until after said date it becomes a law and takes effect when signed.

4. SAME—*Governor has no legislative power.* Under the constitution the Governor has no legislative power and he is no part of the General Assembly, and the only constitutional influence which he has over legislation is the qualified veto which the constitution gives him.

5. SAME—*court cannot determine validity of statute by determining possibility of performance of acts thereunder within fixed time.* The validity of an act of the legislature cannot depend upon

the judgment of the court as to the possibility of the performance of acts required to be done within the time fixed for their performance by the statute.

6. SCHOOLS—*amendment of 1923 as to apportionment of State school fund is not invalid.* The amendment of 1923 adding section 211a to the School law, regarding the basis for the apportionment of the State school fund and specifying certain acts to be performed before a district will be entitled to its fund, is not invalid because it may be impossible to comply with some of the requirements of the act in time to make distribution of the fund in the first year of the taking effect of the act, as there is no defect or inconsistency in the terms of the act itself which renders it incapable of enforcement in subsequent years.

APPEAL from the Circuit Court of DuPage county; the Hon. MAZZINI SLUSSER, Judge, presiding.

EDWARD J. BRUNDAGE, Attorney General, C. W. REED, State's Attorney, EDWARD C. FITCH, and ALBERT D. RODENBERG, for appellant.

GLEN R. BEVERLY, and RICHARD F. LOCKE, for appellee.

Mr. JUSTICE DUNN delivered the opinion of the court:

The board of education of school district No. 41 of DuPage county filed a petition in the circuit court for a writ of *mandamus* commanding the county superintendent of schools to prepare and certify to the Superintendent of Public Instruction the county budget in connection with the distribution of the State school fund, as required by law. The county superintendent demurred to the petition, and upon his demurrer being overruled elected to stand by it, whereupon the court ordered the writ issued, and the defendant appealed.

Before 1923 the amount of the State common school fund, which was distributed directly to the counties, was apportioned with reference to the number of persons resident in the county under twenty-one years of age. In 1923

the legislature passed, and the Governor approved, an act amending section 211 of the School law and other sections and adding a new section, 211*a*. The amendatory act made a change in the method of apportionment of the fund to the various counties by establishing as one basis for the apportionment the teacher-school-day, which was defined in the act, and directed the payment of seventy cents to each county for each teacher-school-day or major fraction thereof, and in addition directed the payment of certain amounts based upon the number of teacher-school-days, the assessed valuation of the property of the district, its population, the number of full-time elementary teachers, the amount of normal school training, or its equivalent, of each teacher, the number of days' attendance of each pupil enrolled in grades from 1 to 8, inclusive, and the number of one-room rural school districts employing a normal school graduate teaching nine school months. Section 211*a* requires the board of education or board of directors of each school district to prepare and certify to the county superintendent of each county, not later than July 15 of each year, its school district budget on blanks to be provided by the Superintendent of Public Instruction, and requires the county superintendent of schools to prepare and certify to the Superintendent of Public Instruction, not later than the first day of October of each year, the county budget on blanks furnished by the Superintendent of Public Instruction. It was this duty which the appellant refused to perform, and it is contended that no such duty is imposed on him, for the reason that the amendatory act of 1923 is invalid because the act became effective on July 2, 1923; that some of the provisions essential to the operation of the act were impossible of performance in that year; that it was a practical impossibility to furnish the Auditor of Public Accounts with the data upon which he was required by the act to make the distribution of the common school fund in January, 1924, and that since the act could not be exe-

316—10

cuted during the first year it was in force because of the conflicting and inconsistent provisions of the act, it was wholly invalid.

The act was passed by the General Assembly on June 19, 1923. It was approved by the Governor on July 2. The contention of the appellant is that it became effective immediately, and the contention of the appellee that it did not become effective until July 1, 1924. Section 13 of article 4 of the constitution provides that no act of the General Assembly shall take effect until the first day of July next after its passage, unless in case of emergency the General Assembly shall by a vote of two-thirds of all the members elected to each house otherwise direct. Section 16 of article 5 provides that every bill passed by the General Assembly shall, before it becomes a law, be presented to the Governor, and if he approve he shall sign it, and thereupon it shall become a law. The appellee contends that the "passage" referred to in the provision that no act of the General Assembly shall take effect until the first day of July next after its passage refers to the time when the bill has passed through the various stages of legislation necessary to make it a valid statute and been approved and signed by the Governor; that the approval of the Governor is the final legislative act, and not until the first day of July after such approval does the act take effect. The contention of the appellant is that "passage" in the clause in question refers to the time when the bill has passed both houses of the legislature. The word is appropriately used in either sense. Webster's New International Dictionary, in defining passage, says: "Of a measure or law, ordinarily passage refers to the final affirmative action by which the assembly enacts the law, but it has been also sometimes used to designate the time of taking effect of the act, (52 Ill. App. 514, 518; 45 Neb. 724;) or the final act necessary to make it a valid law, as the signing or approval by the Governor or other executive.—82 Mass. (16 Gray) 144; 50 Tenn. 442."

The Standard Dictionary, in defining passage, says: "8. The course of a legislative measure through the various stages of debate and action or through a single stage; especially its enactment by the final vote, or the signing or approval by the supreme authority, as the president, king or governor of a State."

In interpreting statutes words are presumed to be used in their ordinary meaning, and it is proper, in case of ambiguity, to consider the context to determine the meaning in which they are used. It is a rule of interpretation that where a word has been used more than once in a statute or instrument it will be presumed to have been used with the same meaning throughout unless there is something to show a different meaning was intended. Sections 12 and 13 of article 4 of the constitution concern the manner of passing laws by the legislature, and by section 12 it is provided that on the final passage of all bills the votes shall be by yeas and nays upon each bill separately and shall be entered upon the journal. By section 13 it is provided that every bill, and all amendments thereto, shall be printed before the vote is taken on its final passage, and every bill, having passed both houses, shall be signed by the speaker thereof. Later in the same section 13 occurs the provision that no act of the General Assembly shall take effect until the first day of July next after its passage. The words "passage" and "passed," as used in the three places mentioned in sections 12 and 13, other than in the phrase in question, and as used in section 16, clearly refer only to the passage of bills by the General Assembly. No reason appears for giving to the term a different meaning when used in the phrase in question from that which it bears in the other places. The subject matter of the provision is the time when an act of the General Assembly shall take effect. That time is declared to be the first day of July next after its passage, and the obviously natural meaning of the words, in the absence of anything showing the contrary, is, after its pass-

age by the General Assembly. It is true that what is said in the previous instances mentioned refers to the passage of bills while the later reference is to an act of the General Assembly, but each refers to the same thing in different stages. A proposed act of the General Assembly, upon its introduction in either house, is called a bill, and during its progress through the two houses, with its various readings, references and amendments, it remains a bill,—a house bill or a senate bill, as the case may be,—but when it has finally passed both houses it has become an act of the General Assembly, though before it becomes a law it requires the approval of the Governor, who may by his veto require its reconsideration by the General Assembly, and it cannot take effect until the first day of July next after its passage except in case of emergency, as provided in section 13. It may, however, become a law before the first day of July, for section 16 of article 5 provides that every bill passed by the General Assembly shall, before it becomes law, be presented to the Governor, and if he approve he shall sign it, and thereupon it shall become a law. A bill as soon as signed by the Governor becomes a law, but it does not become effective until the first day of July following its passage. (*People* v. *Inglis,* 161 Ill. 256.) Since the Governor did not sign the bill until after the first day of July it did not become a law on that date and therefore could not then take effect. When he did sign it on July 2 it did become a law. "Until" means "up to the time of," and as the period of time to July 1 had already elapsed when the act was signed, it took effect at the same time as it became a law. Both requirements must be met before the act takes effect,—the coming of the first day of July and the approval of the Governor,—and it is immaterial which comes first. When the two things combine then the act takes effect.

The briefs have discussed the question whether the act of the Governor in approving or vetoing is executive or legislative in its character. The question is of no impor-

tance in this case, but it may be observed that the Governor, under our constitution, is not a part of the General Assembly. The constitution declares that the legislative power shall be vested in a General Assembly, consisting of a senate and house of representatives. The division of the powers of the government by article 3 of the constitution into legislative, executive and judicial, prohibits any person or collection of persons, being one of these departments, from exercising any power properly belonging to either of the others except as expressly directed or permitted by the constitution. The supreme executive power is vested in the Governor, and by section 16 of article 5, as has been seen, it is expressly directed that a bill passed by the General Assembly must be presented to him before it becomes a law, and by his veto he may require the General Assembly to reconsider it, but he cannot prevent its becoming a law if each house of the legislature again passes it by a two-thirds vote. The law is the act of the General Assembly. The Governor cannot originate or amend a bill. The only constitutional influence which he has over legislation is the qualified veto which the constitution gives him. He may veto separate items of a bill appropriating money but he cannot amend any item. It is the act of the General Assembly which becomes a law, whether the act takes effect with the approval of the Governor or without his approval or over his veto.

The cases cited by the appellee as to the meaning of the word "passage" are of little assistance. They involve the construction of the words "the time of the passage of this act," and similar terms used in statutes, having reference to things done or to be done, or conditions existing, or which may exist before, at or after the passage of the act, and furnish no guide to the meaning of the language of the constitution. The language of the emergency clause designed to put an act into immediate effect is frequently, "This act shall take effect from and after its passage." Of

necessity it can refer only to the final act necessary to make the act a valid law, for the General Assembly has not the power to declare the law in effect before the final act required by the constitution is done. Where there is no necessity for such meaning of the term it is given such construction as the circumstances require to declare the intention, and it is said in *State* v. *Williams,* 173 Ind. 414, that "there are many cases to the point that the phrase 'after the passage' of an act is a technical term and refers to the time of its going into effect." This statement is followed by a long list of cases, including many of those cited by the appellee. These cases, of course, do not sustain the appellee's proposition that "the date of the passage of an act, within the meaning of the constitution, is the date on which a bill properly passed becomes a law," for as held in *People* v. *Inglis, supra,* the bill becomes a law when approved by the Governor but it cannot take effect until July 1. The proposition that the word "passage," as used in that part of section 13 of article 4 in question, refers to the time of the act's going into effect involves the absurdity of making section 13 say: "No act of the General Assembly shall take effect until the first day of July next after its going into effect unless," etc. One of the cases cited both by the Supreme Court of Indiana and the appellee is *Patrick* v. *Perryman,* 52 Ill. App. 514. It sustains the proposition of the Indiana court, and because it does so it does not sustain the appellee's proposition in support of which it is cited. The case was a suit by a dentist for professional services, and the defendant claimed that the plaintiff had not shown that he was registered as a dentist, as required by law. The act to regulate the practice of dentistry approved on May 30, 1881, which went into effect July 1, provided that every person should be registered with the board of examiners within six months, and those not so registered should not be permitted to practice dentistry until examined and licensed. The plaintiff was

registered on December 26, 1881, and it was held that the date of passage of the act referred to July 1 and not to May 30. In *Johnson* v. *Fay,* 16 Gray, 144, the statute excepted rights acquired prior to the passage of the act, and it was held that the time referred to was not the passage of the act by the legislature or its approval by the Governor, but the subsequent date when it took effect. An examination and distinguishing of all the cases is unnecessary. They correctly hold, some of them as in the Indiana case, and the two last cited that the "passage of an act" refers to the time of its approval by the executive. (*Wartman* v. *Philadelphia,* 33 Pa. St. 202; *Denver and Rio Grande Railroad Co.* v. *Brenneman,* 45 Colo. 264; *Cordiner* v. *Dear,* 55 Wash. 479;) others to the time of its final passage by the legislature, (*Elliott* v. *Cranston,* 10 R. I. 88,) according to the circumstances of the particular case. In this case the term as used in the constitutional provision in question cannot refer to the time when the act goes into effect, and in view of the meaning which must be given to the words "passage" and "passed" as they are elsewhere used in the constitution in connection with the enactment of laws, we regard the word "passage," as used in the clause of section 13, as referring to the passage of the act by the two houses of the General Assembly.

The only case which has come to our attention which considers the constitutional question involved here is *State* v. *Mounts,* 36 W. Va. 179. The constitution of West Virginia prescribed that no act of the legislature except such as may be passed at the first session under the constitution shall take effect until the expiration of ninety days after its passage, unless the legislature shall by a vote of two-thirds of the members elected to each house, taken by yeas and nays, otherwise direct. An act was passed by the legislature authorizing the appointment of jury commissioners on the 27th day of February, 1891, but did not receive the approval of the Governor until March 4. An

appointment of commissioners was made under the act on June 1, 1891, and it was claimed the appointment was not valid because under the constitutional provision which has been quoted the act did not become effective until ninety days from March 4, which would be June 2, but it was held that the law became effective on May 28, ninety days after its passage by the legislature. The court said: "It will be observed that the words 'passed' and 'passage' in all four of these contiguous sections refer exclusively to the acts of the legislature and its two branches and have no relation whatever to the approval of the law by the Governor."

The appellant contends that an act so conflicting and inconsistent in its provisions that it cannot be executed is inoperative and void. The case of *People* v. *Sweitzer,* 266 Ill. 459, so holds, and it is, of course, true that an act of the legislature so vague and uncertain in its terms as to convey no meaning, or which, because of its uncertainty or ambiguity, cannot be administered, is void. But the act in question is not subject to this objection. No difficulty in administering the law is suggested arising out of any vagueness, conflict or uncertainty in its terms. That is not the character of the objection which is made, but the objection is that the time fixed for the performance of certain duties required of the board of education, the county superintendent and the Superintendent of Public Instruction expires within so short a period after the act becomes a law that the performance of such duties within the time fixed by the law was impossible during the first year after the law became effective,—that is, July 2, 1923. The process of reaching the apportionment of the fund requires that thirty days before the close of each school year the superintendent, principal or teacher in charge of each school shall submit in duplicate to the county superintendent of schools the names of the several teachers employed in the district and their training and classification, as provided in the act. The

county superintendent must compare this list with the list
certified to him by the proper certificating authorities, and
within ten days return the duplicate, together with his cor-
rections, to the superintendent, principal or teacher making
the report, who shall compile the school district budget upon
the information therein contained. The board of education
or the board of directors of each school district is required
to prepare and certify to the county superintendent, not
later than July 15 of each year, its school district budget
on blanks to be provided by the Superintendent of Public
Instruction, substantially in the form provided by the stat-
ute. These forms require the furnishing of information in
regard to the number of school teachers, the attendance of
pupils, the number of teachers employed, the assessed valu-
ation of the district, the total number of teacher-school-
days, the amount of normal school training of the teachers,
whether the district is a one-room rural school district em-
ploying a normal school graduate for a period of thirty-
six weeks, pupil attendance and the district tax rate. The
county superintendent must prepare and certify to the
Superintendent of Public Instruction, not later than Octo-
ber 1, the county budget, and the Superintendent of Public
Instruction is required to prepare and certify to the Auditor
of Public Accounts, not later than December 1, the State
budget, setting forth the amount of money due each county
from the common school fund. The failure of the board
of education or board of directors to prepare and certify to
the county superintendent the district budget on or before
August 15 shall constitute a forfeiture by the district of its
right to participate in the distribution of the common school
fund for the succeeding year. It is true that the require-
ment of the district to submit to the county superintendent
of schools the names of the teachers employed in the dis-
trict and their training classification thirty days before the
close of the school year could not be observed for the year
1923, but the report could be made and the information

furnished so as to enable the making and return of the district budgets to the county superintendent. The district does not incur the penalty of the loss of its portion of the fund if the budget is furnished to the county superintendent by August 15. We cannot take judicial notice that it is impossible to do any of the things required by this act within the time fixed for their performance after July 2, 1923. The validity of an act of the legislature cannot depend upon the judgment of the court as to the possibility of the performance of acts required to be done within the time fixed for their performance by the statute. In the case cited (*People* v. *Sweitzer, supra,*) the question was not of that character but the difficulty in enforcing the act arose out of the inconsistency in the requirements of the act itself. The requirement of a primary election in that act three weeks before the election was impossible of performance in connection with other provisions of the act which were essential to the election but could not be complied with if the primary election were held at the time fixed by the act. Even if it had been impossible to comply with all the requirements of the act in time to make the distribution of the State common school fund under its terms in January, 1924, this would not destroy the validity of the act and the distribution of the fund in subsequent years. The act is capable of enforcement according to its terms, and if for any reason not arising out of any legal defect in the act itself it was incapable of enforcement during the first year after it became a law it may still be enforced in subsequent years.

The judgment is affirmed.      *Judgment affirmed.*