(No. 19730.—

MONTGOMERY WARD & CO., INC., Appellant, vs. WIL-
LIAM J. STRATTON, Secretary of State, Appellee.

*Opinion filed December 18, 1930.*

WINSTON, STRAWN & SHAW, and PAUL O'DONNELL,
for appellant.

OSCAR E. CARLSTROM, Attorney General, (B. L. CA-
TRON, of counsel,) for appellee.

Mr. COMMISSIONER PARTLOW reported this opinion:

Appellant, Montgomery Ward & Co., filed a bill in the
circuit court of Sangamon county against appellee, the Sec-
retary of State of Illinois, to require him to hold $19,971.50,
alleged to have been illegally exacted from appellant as an
additional fee under section 96 of the general Corporation
act, until the court determined whether said sum was due
the State, and in case the court found that said sum was
not due to the State, that appellee be ordered to return
the same to appellant. A demurrer was sustained to the
bill, it was dismissed for want of equity, and an appeal has
been prosecuted to this court.

The bill alleged the following facts: On November 21,
1919, appellant was incorporated under the name of Thorne

Brothers. On December 3, 1919, the name was changed to Montgomery Ward & Co. At that time section 96 of the general Corporation act provided that the Secretary of State should collect an initial fee of one-twentieth of one per cent upon the amount of capital stock authorized to be issued, but in no case should the fee be less than $20, and a like fee upon any subsequent increase, and, in addition thereto, the same fee as that required for filing other certificates of amendment. In case the corporation had capital stock of no par value, such shares, for the purpose of fixing the fee, should be considered to be of the par value of $100 each.

By its charter appellant was authorized to issue 100,000 shares of preferred stock of the par value of $100 each, amounting to $10,000,000; 205,000 shares of class A non-par value stock, valued, under the statute, at $100 each, amounting to $20,500,000; 95,000 shares of class B non-par value stock, valued, under the statute, at $100 each, amounting to $9,500,000; 1,000,000 shares of common non-par value stock, valued, under the statute, at $100 each, amounting to $100,000,000, making a total authorized capital stock of $140,000,000, upon which a tax of $70,000 was paid.

On February 28, 1921, appellant amended its charter by authorizing the issuance of 285,000 additional common non-par value shares, valued, under the statute, at $100 each, amounting to $28,500,000, on which an additional initial fee, amounting to $14,250, was paid, making a total paid to that date of $84,250. Appellant actually issued 80,000 shares of preferred stock, amounting to $8,000,000; 205,000 shares of class A stock, amounting to $5,594,037.28; 95,000 shares of class B stock, amounting to $2,592,358.74, and 970,000 shares of common stock, amounting to $29,100,000. All of the stock actually issued was paid for in full in the sum of $45,286,392.02. The 285,000 additional non-par value common shares authorized to be issued on

February 28, 1921, were issued in exchange for the 95,000 class B common shares and appellant received no additional consideration therefor.

On February 21, 1922, appellant filed another amendment to its charter decreasing its capital stock and changing the common shares from non-par value stock into shares of the value of $10 each. The $100 preferred shares were reduced from 100,000 to 42,498 shares and from a par value of $10,000,000 to $4,249,800. The class B stock, consisting of 95,000 non-par value shares, was eliminated, being exchanged for the 285,000 non-par value common shares. The 1,285,000 non-par value common shares were changed into the same number of shares of the value of $10 each.

On February 25, 1927, appellant again amended its charter, eliminating the remaining 42,498 shares of $100 par value preferred stock having a value of $4,249,800, said stock having been redeemed and canceled. The common $10 par value shares were changed to non-par value shares, the number being 1,285,000 shares. The class A and common share stocks were not changed by the amendments of February 21, 1922, and February 25, 1927, except in so far as they were changed by the reduction of the preferred shares and the capital stock represented by them by the amendment of February 21, 1922, and the elimination of the preferred and class B shares and the capital stock represented by them by the amendment of February 25, 1927.

Although appellant had previously paid $9750 as an initial fee upon its original authorization of preferred stock and of class B stock, both of which had been retired, and although it had paid initial fees of $74,500 upon 205,000 shares of class A non-par value stock and 1,285,000 shares of non-par value stock, appellee construed the statute to mean that appellant was required to pay an additional fee of $55,701 because of the change of the $10 par value common stock into non-par value common stock. Appellee computed the tax as follows: He held that the new capitaliza-

tion, consisting of 205,000 class A and 1,285,000 common stock, both non-par value, was for taxation purposes $149,-000,000; that appellant had paid an initial fee upon $4,249,-800 of $100 par value preferred stock, upon $20,500,000 class A non-par value shares and upon $12,850,000 of $10 par value common shares, making an aggregate authorization of $37,599,800, which sum deducted from the $149,-000,000 left a balance of $111,400,200, which appellee held represented the increase in the authorized capital stock by this amendment. The tax upon the $111,400,200 was $55,701. Appellant alleged that as a matter of fact it had paid an initial fee upon an aggregate valuation of $168,500,000, amounting to $84.250. Appellant paid the $55,701 under protest because appellee refused to file the amendment of February 25, 1927, until payment was made.

On November 19, 1928, appellant again amended its charter authorizing it to issue 205,000 shares of non-par class A stock and 1,285,000 shares of non-par value common stock. By this amendment it did not change the number of class A stock but it increased the number of non-par value shares from 1,285,000 shares to 6,000,000 shares. It was stated in this amendment that it was proposed to issue at once 2,282,502 additional non-par value common shares for a total consideration of $39,942,785. Upon the presentation of this amendment to appellee to be filed he demanded an initial fee upon the proposed additional shares which were to be issued at once and assessed an additional initial fee of $19,971.90, and refused to accept for filing said amendment or to issue a certificate until said sum was paid. Appellant paid this sum under protest.

On May 12, 1927, section 96 of the general Corporation act was amended to provide that in the event that a corporation has capital stock of non-par value, its shares, for the purpose of fixing the fee, shall be taken and considered at the amount of the consideration received or to be received by such corporation for such shares.

The bill further alleged that on March 10, 1927, the court of claims of Illinois ruled that it would not take jurisdiction of claims for refunds of franchise taxes and initial fees paid to the Secretary of State, giving as its reason that corporations paying such franchise tax could by injunction restrain the Secretary of State from paying said money into the State treasury and thus raise in a court of record the question of the validity of the tax, and if the corporation neglected to do so the court of claims would consider that it had slept upon its rights and would refuse to take jurisdiction, therefore appellant had no remedy in the court of claims; that appellant has paid $55,701 as initial fees which were not due; that said sum has been paid into the treasury; that there is now due to appellant from the State said sum, and that until fees are incurred by appellant in excess of said sum it will owe the State nothing as additional fees; that the sum of $19,971.90 paid by it under protest is not legally due and has been unlawfully collected, and that appellee still holds said sum but unless restrained by the order of this court he will pay it into the treasury, whereupon appellant will have no remedy in the premises. The prayer of the bill was as above stated.

As grounds for reversal appellant contends that the fee of $55,701 was not legally due because there was no increase in its capital stock at the time of the change of its par value stock of $10 per share to non-par value stock on February 25, 1927; that while no suit was brought to recover this amount, either by injunction in the circuit court, as provided by the statute, or by petition to the court of claims, appellant still had the right to set off a part of such sum against the fee subsequently assessed, amounting to $19,791.90.

In determining whether the demurrer was properly sustained to this bill it will not be necessary to determine whether the fee of $55,701 was or was not legally assessed. Section 35 of chapter 127b (Cahill's Stat. 1929, p. 2469,)

in substance provides that all officers of the State shall hold for thirty days all money received for or on behalf of the State under protest, and on the expiration of such period deposit the same with the State Treasurer, unless the party making such payment shall within such period file a bill in chancery and secure a temporary injunction restraining the making of such deposit, in which case such payment shall be held until the final order or decree of the court. This statute provides a method by which money paid under protest to a State official may be recovered. It affords a complete and adequate remedy in a court of equity where all questions can be fully and speedily determined. It is the only statute on this subject to which our attention has been called. Appellant did not see fit to take advantage of the provisions of this statute and no reason or excuse is alleged in the bill for such failure. Appellant permitted the $55,701 to be paid into the State treasury, where it remained for almost two years before the bill in this case was filed. The bill alleged that the money was paid under protest. If it was paid under protest appellant knew at that time that the fee was illegal. The bill alleged that after the money was paid into the State treasury there was no adequate remedy provided for its recovery, as the State could not be sued. On this point counsel for appellant in their argument say: "We come into this court because once that action has been taken and the money of this appellant has been mingled with the other funds of the State there is no method by which it can be refunded to or secured back by the appellant." If appellant was without remedy and could not recover by a suit against the State it cannot obtain indirectly what it could not obtain directly. If appellant is entitled to relief in this case, it would, in effect, recover $19,971.90 of the $55,701 paid, and the balance might be likewise recovered upon subsequent increases of capital stock. The $55,701 fee was assessed in February, 1927, and the $19,971.90 was assessed on November 19, 1928. It is admitted that the

last fee is valid. The bill was filed on December 12, 1928, within thirty days of the date the last fee was assessed, but the bill does not question the validity of the last fee but for the first time questions the validity of the prior assessment and was based upon the ground that that fee was not legally due and that the last fee should be set off against the prior fee and the $19,971.90 should be returned to apppellant.

The bill did not show that appellant was entitled to the relief sought, the demurrer was properly sustained, and the decree will be affirmed.

Per CURIAM: The foregoing opinion reported by Mr. Commissioner Partlow is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Decree affirmed.*