(No. 3521—)

EUGENE PETER, ET AL., Claimants, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed May 12, 1942.*

ALLEN H. SCHULTZ, for claimants.

GEORGE F. BARRETT, Attorney General; GLENN A. TREVOR, Assistant Attorney General, for respondent.

CHIEF JUSTICE DAMRON delivered the opinion of the court:

This complaint was filed June 17, 1940, on behalf of seventeen claimants located at various places throughout the State, each requesting a refund in the amount of $50.00.

The complaint alleges that claimants were, or had been for some time prior to July 1, 1939, engaged in the wholesale purchase and distribution of beer, and each had obtained a distributor's license, or an importing distributor's license, as provided by the Illinois Liquor Control Act, for the fiscal period commencing July 1, 1939, and expiring June 30, 1940.

That in addition each claimant applied for, and obtained a retailer's liquor license, which covered the same period, and for which the fee was $50.00. That each claimant obtained such retailer's liquor license because he engaged in selling or delivering beer in not less quantities than by the case or keg, to the home of a consumer for the latter's use or consumption at such home.

The complaint further alleges that the retailer's liquor license issued to each one of them became effective July 1, 1939, and expired June 30, 1940. That in the latter part of July, 1939, Governor Henry Horner, Governor of the State of Illinois, signed an amendment to the Illinois Liquor Control Act which amended Article (6), Section (3).

Claimants assert that the amendment above referred to became retroactive to July 1, 1939, and consequently the retailer's license obtained by each of the claimants was unnecessary. They further say that since the bill was not signed until the latter part of July it was necessary for the claimants to obtain retailer's liquor license in order to comply with the Illinois Liquor Control Act during the intervening period, that is, between July 1, 1939, and the date on which the Governor signed the bill. Also that claims for a refund have been made by the respective claimants to the Illinois Liquor Control Commission, and that said commission informed the claimants that it would be impossible for it to grant any refunds, inasmuch as there was no appropriation made by the Legislature for such refunds, and further advised that these claims be filed in the Court of Claims.

Therefore, claimants believe that in view of the above facts it is just and equitable that this court recognize their claims in the sum of $50.00 each, and that a refund be ordered by this court.

The Attorney General files a motion to dismiss the complaint on the following grounds:

(a) That claimants' complaint does not set forth a claim which the State of Illinois, as a sovereign common-

wealth, should discharge and pay in that claimants seek an award representing the refund of license fees covering the period July 1, 1939, to July 1, 1940, during which period of time the law providing for such license was changed.

(b) That an award should not be made solely on the grounds of equity and good conscience.

(c) That the complaint does not comply with Rules 5(b) and 6(a) of the Court of Claims.

The case comes to this court on the complaint, motion, brief, statement and argument of the respondent.

Upon reading the complaint the court finds that it does not conform to rule 5(b) and 6(a) of the Court of Claims, but since the complaint could be amended in these respects to conform to the rules, and since, as hereinafter pointed out, no award could be made on this claim on the merits, such omissions are totally immaterial.

The claimants admit the license period for retailer's liquor license began on July 1, 1939; each claimant further admits that he was engaged in selling and delivering beer in such quantities as to make a retailer's liquor license necessary on July 1, 1939, until the date when the amendment to Article (6), Section (3) of the Illinois Liquor Control Act was signed by Governor Horner.

Paragraph (6) of the complaint reads as follows:

"That this amendment signed by the Governor became retroactive to July 1, 1939, and consequently, the retail license obtained by the claimants was unnecessary. However, in view of the fact that the bill was not signed until the latter part of July, it was necessary for the claimants to obtain a retail license in order to comply with the Illinois Liquor Control Law during the intervening period, that is between July 1, 1939, and the date on which the Governor signed the bill."

The Attorney General cites *Board of Education* vs. *Morgan*, 316 Ill. 143, which is controlling in this case. In that case the court said, in discussing this very question:

"A proposed act of the General Assembly, upon its introduction in either house, is called a bill, and during its progress through the two houses, with its various readings, references and amendments, it remains a bill, a house bill or a senate bill, as the case may be—but when it has finally passed both houses it has become an act of the General Assembly, though before it becomes a law it requires the approval of the Governor, who may by his veto require its reconsideration by the General Assembly, and it cannot take effect until the first day of July next after its passage except in case of emergency, as provided in Section 13. It may, however, become a law before the first day of July, for Section 16 of Article 5 provides that every bill passed by the General Assembly shall, before it becomes law, be presented to the Governor,

and if he approve he shall sign it, and thereupon it shall become a law. A bill as soon as signed by the Governor becomes a law, but it does not become effective until the first day of July following its passage. (*People* vs. *Inglis,* 161 Ill. 256.) Since the Governor did not sign the bill until after the first day of July it did not become a law on that date and therefore could not then take effect. When he did sign it on July 2, it did become a law. 'Until' means 'up to the time of' and as the period of time to July 1, had already elapsed when the Act was signed, it took effect at the same time as it became a law. Both requirements must be met before the act takes effect—the coming of the first day of July and the approval of the Governor—and it is immaterial which comes first. When the two things combine then the act takes effect."

Likewise, the State Government Act (Ill. Rev. Stat., 1941, Chap. 127, Par. 171) would bar a recovery for refund of these license fees. The claimants could have protected themselves by notice and protest as provided in said Act. Where one pays a license fee, without any compulsion or duress, which the law would not compel him to pay, such payment is voluntary and made under a mistake of law and cannot be recovered. *Oswald Jaeger Baking Co.* vs. *State,* 11 C. C. R. 119; *Sacony-Vacuum Oil Co.* vs. *State,* 11 C. C. R., 149; *Central States Dist.* vs. *State,* 11 C. C. R. 417; *Madera Wineries & Dist.* vs. *State,* 11 C. C. R. 632.

This court has repeatedly held that the Legislature in establishing its Court of Claims merely provided a forum in which claims against the State might be heard, and that the court cannot properly recommend an award unless there exists some legal basis upon which the State, if it were suable in a court of law might be held liable.

Under the facts recited in the complaint no award could be properly allowed by the court, and the motion of the Attorney General is therefore allowed and the claim dismissed.