(No. 44761.—)

THE PEOPLE *ex rel.* LAWRENCE E. KLINGER, Petitioner, v. MICHAEL J. HOWLETT, Auditor of Public Accounts, Respondent.

*Opinion filed January 17, 1972.*

GOLDENHERSH and KLUCZYNSKI, JJ., specially concurring.

DON H. REUBEN, LAWRENCE GUNNELS and JAMES C. MUNSON, of KIRKLAND, ELLIS, HODSON,

CHAFFETZ & MASTERS, and DAVID M. HARTIGAN, of HARTIGAN & HARTIGAN, all of Chicago, for petitioner.

WILLIAM J. HARTE and KEVIN M. FORDE, both of Chicago, for respondent.

MR. JUSTICE SCHAEFER delivered the opinion of the court:

On October 29, 1971, this court granted leave to file an original petition for *mandamus* to compel the respondent Auditor of Public Accounts to process vouchers and issue warrants in connection with Senate Bills 1195, 1196, and 1197, passed by both houses in the 77th General Assembly. These bills are also identified as "Public Acts 77–1656, 77–1657 and 77–1658." They relate to financial assistance for nonpublic school education. The respondent answered, denying the constitutionality of the bills, an expedited briefing schedule was fixed, and oral argument was heard on December 13, 1971.

The briefs of the parties have discussed the validity of the bills under the first amendment to the constitution of the United States and under article I, section 3, and article X, section 3 of the 1970 constitution of Illinois. Issues were also discussed as to the proper interpretation of authority given to the Governor, under section 9(e) of article IV of the constitution of 1970, to return a bill passed by the General Assembly with his "specific recommendations for change." A question was also raised as to whether the bills complied with the command of article IV, section 8(d) of the constitution of 1970, that "Appropriation bills shall be limited to the subject of appropriations." Since the case was submitted, the parties have complied with the court's request that they submit supplemental memoranda on the question of whether or not the three bills are presently in effect.

The three bills were passed by the Senate on June 2,

1971, and by the House on June 22, 1971. By messages dated September 10, 1971, the Governor, stating that he was acting pursuant to the authority vested in him under article IV, section 9(e) of the constitution of 1970, returned each bill with the recommendation that the title of each bill be amended and that everything in each bill after the enacting clause be stricken and entirely new textual material be substituted therefor. On October 14, 1971, a motion to accept the Governor's recommendations was adopted by the Senate and a similar motion was adopted by the House of Representatives on October 28, 1971. On that date the Governor certified that the acceptance of the General Assembly conformed to his specific recommendations for change.

Section 10 of article IV of the constitution of 1970 provides:

"Section 10. Effective Date of Laws

The General Assembly shall provide by law for a uniform effective date of laws passed prior to July 1 of a calendar year. The General Assembly may provide for a different effective date in any law passed prior to July 1. A bill passed after June 30 shall not become effective prior to July 1 of the next calendar year unless the General Assembly by the vote of three-fifths of the members elected to each house provides for an earlier effective date."

When the General Assembly acted upon the changes recommended by the Governor, the following provision concerning the "effective date of laws" was in effect:

"A law passed prior to July 1 of a calendar year and after June 30, 1971, shall become effective on October 1 following its becoming a law unless by its terms it specifically provides for a different effective date. A law passed prior to July 1, 1971, shall become effective on July 1, 1971, or upon its becoming a law, which ever is

later, unless such law by its terms specifically provides for a different effective date."

H.B. 3029: Public Act 77–147.

These are the constitutional and legislative provisions that were in effect on October 28, 1971, when the Governor certified that the action of the General Assembly with respect to the three bills now before us conformed to his specific recommendations. None of the three bills contained a provision specifically providing an effective date. Under these provisions the bills cannot become effective before July 1, 1972. These are also the constitutional and legislative provisions that were in effect when another bill, House Bill 3032, also identified as "Public Act 77–1691," was certified by the Governor on November 17, 1971. That bill is relied upon to establish for the three bills now before us an effective date earlier than July 1, 1972.

House Bill 3032 (P.A. 77–1691), as printed in Illinois Legislative Service 1971 Laws, p. 2974, provides:

"Two or more Acts which relate to same subject matter and which are enacted by the same General Assembly shall be construed together in such manner as to give full effect to each Act except in case of an irreconcilable conflict. In case of an irreconcilable conflict the Act last acted upon by the General Assembly is controlling to the extent of such conflict. The Act last acted upon is determined by reference to the final legislative action taken by either house of the General Assembly, whether such final action is passage on third reading in the second house, concurring in or receding from an amendment, adoption of a conference committee report, acceptance of the Governor's specific recommendations for change, or passage over the Governor's veto. *However, for the purpose of determining*

*the effective date of laws under Section 10 of Article IV of the Constitution of [1970] and 'An Act in relation to the effective date of laws', approved July 2, 1971, a bill is 'passed' at the time of its final legislative action before presentation to the Governor as provided in paragraph (a) of Section 9 of Article IV of the Constitution of 1970.*

"An irreconcilable conflict between 2 or more Acts which amend the same section of an Act exists only if the amendatory Acts make inconsistent changes in the section as it theretofore existed.

"The rules of construction provided for in this section are applicable to Acts enacted by the same General Assembly throughout the 2 year period of its existence.

"Section 2. This amendatory Act shall take effect upon its becoming a law."

(The portion of the specific change recommended by the Governor that is significant for present purposes is italicized.)

House Bill 3032 could not have become effective before November 17, 1971, the date upon which the Governor certified that it was passed in accordance with his recommended changes. Therefore, it cannot be applicable to the three bills involved in this case as it became effective after October 28, 1971, when those bills became law, and it contains no suggestion that it was intended to have a retroactive effect. As the provisions of House Bill 3032 are not applicable to this case, we do not now consider problems which might arise from the fact that the changes proposed by the Governor were not accepted in the same form by the two houses of the General Assembly. Cf. H.J. Oct. 20, 1971, p. 18——S.J. Nov. 2, 1971, p. 18.

In *Board of Education v. Morgan (1925), 316 Ill. 143,*

this court held that a bill passed by the General Assembly on June 19, 1923, and approved by the Governor on July 2, 1923, became effective upon its approval, and rejected the contention that it did not become effective until July 1, 1924. The court there quoted the following definitions of the word "passage":

> "Webster's New International Dictionary, in defining passage, says: 'Of a measure or law, ordinarily passage refers to the final affirmative action by which the assembly enacts the law, but it has been also sometimes used to designate the time of taking effect of the act, (52 Ill.App. 514, 518; 45 Neb. 724;) or the final act necessary to make it a valid law, as the signing or approval by the Governor or other executive.—82 Mass. (16 Gray) 144; 50 Tenn. 442.' The Standard Dictionary, in defining passage, says: '8. The course of a legislative measure through the various stages of debate and action or through a single stage; especially its enactment by the final vote, or the signing or approval by the supreme authority, as the president, king or governor of a State.' " (316 Ill. 143, at 147.)

The court there was concerned only with the normal procedure whereby the legislature initially passes a bill and sends it to the Governor for his approval; no executive amendment procedure was in effect at that time. Read as a whole, the opinion in *Morgan* defines the time when a bill is passed as the time of the last legislative act necessary so that the bill would become law upon its acceptance by the Governor without further action by the legislature. We continue to adhere to this definition. In the present situation the last act of the legislature which permitted the Governor to make the bills become law by his acceptance was the vote of the houses of the General Assembly which approved the Governor's changes in the bills. For the

purpose of section 10 of article IV, these bills were "passed" on October 28, 1971, when the House voted to accept the Governor's executive amendment after the Senate had already done so. Any other definition of the word "passed" which fixed an earlier time would require this court to rule that the bills were passed before the legislature ever considered them in their final form, indeed before they were written. Nothing in the constitution of 1970 suggested that the word "passed" was used in such an artificial and abnormal sense.

Senate bills 1195, 1196 and 1197 were passed on October 28, 1971, and they became law when the Governor certified them pursuant to article IV, section 9(e) on October 28, 1971. But under section 10 of article IV they are not effective until July 1, 1972, because they were passed after June 30 and the legislature did not fix an earlier effective date.

What has been said is sufficient to dispose of the issues that are before us in this case, and ordinarily we would say no more. It has been pointed out, however, that there are several other bills adopted by the 77th General Assembly with respect to which the Governor has made specific recommendations for changes under section 9(e) of article IV. This fact prompts us to observe that the scope of the Governor's authority under that section has not been clearly stated either in the constitution itself or in the committee reports or debates in the constitutional convention.

The text of the constitutional provision is:

"(e) The Governor may return a bill together with specific recommendations for change to the house in which it originated. The bill shall be considered in the same manner as a vetoed bill but the specific recommendations may be accepted by a record vote of a majority of the members elected to each house. Such bill shall be presented again to the Governor and if he certifies that such acceptance conforms to his specific recommenda-

tions, the bill shall become law. If he does not so certify, he shall return it as a vetoed bill to the house in which it originated."

Our examination of the records of the Convention shows that the following terms were used to describe the kinds of "specific recommendations for change" that were contemplated: "corrections;" "precise corrections;" "technical flaws;" "simple deletions;" "to clean up the language." In response to the following question put by Delegate Netsch, however, "Then was it the Committee's thought that the conditional veto would be available only to correct technical errors?" a committee member answered, "No, Ma'am."

Upon the basis of the imprecise text of the constitutional provision and the materials before us in this case, we cannot now attempt to delineate the exact kinds of changes that fall within the power of the Governor to make specific recommendations for change. It can be said with certainty, however, that the substitution of complete new bills, as attempted in the present case, is not authorized by the constitution.

The petition for *mandamus* is therefore denied.

*Writ denied.*

MR. JUSTICE GOLDENHERSH, specially concurring:

Although I agree that the writ of *mandamus* must be denied, I cannot concur in the decision of the majority with respect to the passage and effective dates of the bills. In my opinion, correctly interpreted, sections 8, 9 and 10 of article IV of the constitution of 1970 require us to hold that the bills were passed on June 22, 1971, and became effective on October 28, 1971.

It is apparent that section 8, entitled "Passage of Bills" means by the term "passage," the concurrence of a majority of the members of each house, prior to presentation to the Governor as required by section 9.

Section 10 deals with the effective date of laws and

contains no reference to gubernatorial approval nor does it make mention of when a bill becomes law. All references are to laws or bills "passed," and the effective date is controlled, not by date of approval but by date of passage.

Paragraph (a) of section 9 provides that following presentation to the Governor within 30 days after its passage, if he approves a bill and signs it, "it shall become law." There is no mention made of the effective date which, obviously, is determined by the date of passage. This case presents no questions arising under the provisions of paragraphs (b), (c), and (d), but it should be noted that both paragraphs (c) and (d) contain the phrase "shall become law", as does paragraph (a), and that the methods by which the bills become law are alternatives to the method provided in paragraph (a).

Paragraph (e) provides an alternative to gubernatorial approval or outright veto. It provides for legislative "acceptance" of the Governor's recommendations, does not mention "passage" of a bill, and provides further that upon his certification it "shall become law." Clearly the reference throughout the paragraph is to a bill passed in accordance with section 8 and presented to the Governor in accordance with paragraph (a) of section 9. What occurs when paragraph (e) is invoked is not passage of a bill but the exercise by the Governor, and acceptance by the General Assembly, of an alternative form of veto applicable to a bill previously passed and presented.

Despite my disagreement with the majority with respect to the effective date of these bills, I am of the opinion that what was done here went far beyond the scope of "specific recommendations for change" permissible under paragraph (e), and I concur, therefore, that the writ must be denied.

MR. JUSTICE KLUCZYNSKI joins in this special concurrence.