THOMAS KADLEC, Plaintiff-Appellee, v. THE DEPARTMENT OF PUB-
LIC AID, Gregory Coler, Director, Defendant-Appellant.

First District (2nd Division)   Nos. 85—3762, 86—0437 cons.

Opinion filed April 28, 1987.

Neil F. Hartigan, Attorney General, of Springfield (James C. O'Connell
and William D. Leslie, Special Assistant Attorneys General, of Chicago, of
counsel), for appellants.

Hayt, Hayt & Landau, of Chicago (Martin Z. Craig, Barry J. Novak, and Charles R. Goldstein, of counsel), for appellee.

PRESIDING JUSTICE SCARIANO delivered the opinion of the court:

On July 5, 1985, Thomas Kadlec (Kadlec), plaintiff-appellee, was granted a hearing before the Illinois Department of Public Aid (the IDPA) concerning the rejection of his application for medical assistance under the Aid to the Aged, Blind or Disabled program. On July 12, 1985, the IDPA issued a "Final Administrative Decision" which affirmed the denial. Kadlec subsequently filed a "Complaint for Administrative Review" in the circuit court to contest the July 12 finding. As its answer to Kadlec's complaint, the IDPA was required to file the original or a certified copy of "the entire record of the proceedings under review." (Ill. Rev. Stat. 1985, ch. 110, par. 3—108(b).) However, the IDPA was unable to file the transcript of Kadlec's administrative hearing because substantial portions of the tape used to record the proceedings were inaudible and could not be accurately transcribed.

Consequently, the IDPA filed a motion to remand the matter to the Department for a new administrative hearing, requesting that the court provide it the opportunity to prepare a complete and accurate transcript thereof. On October 2, 1985, the circuit court heard arguments and granted the IDPA's motion to remand for a new administrative hearing in order to produce a record for review and on its own initiative ordered Kadlec's counsel to submit a petition for attorney fees and costs inasmuch as the IDPA "screwed up by not having a good tape." In response to this order, Kadlec's counsel filed a petition only for attorney fees in the amount of $1,075.

Responding to the petition for fees, the IDPA asserted that its inability to prepare a complete transcript was not a proper basis upon which to award fees and that the circuit court did not have authority to enter such a money judgment. Kadlec replied that the court did have the power to impose fees under the dictates of section 2—611 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—611) or under the court's general equitable power (Ill. Rev. Stat. 1985, ch. 110, par. 3—111). Kadlec's counsel then filed a supplemental petition, requesting an additional $1,025 in fees.

When the circuit court considered the petitions for fees on November 25, 1985, the trial judge declined to set aside the October 2 order and instead addressed the propriety of the amount of fees Kadlec requested. The court entered an order granting Kadlec $1,400 in attorney fees, stating that its power to do so was predicated upon the "gen-

eral equitable authority of the court to impose fees." We reverse.

The only question presented for review is whether the award of attorney fees was proper in this instance. The General Assembly has expressly granted *exclusive* jurisdiction to the Court of Claims to determine awards of attorney fees against the State or its agencies. Until recently, the doctrine of sovereign immunity had absolutely barred our courts from awarding costs against the State. However, article XIII of the 1970 Illinois Constitution decrees that "[e]xcept as the General Assembly may provide by law, sovereign immunity in this State is abolished." (Ill. Const. 1970, art. XIII, sec. 4.) In 1972, the General Assembly enacted legislation (Ill. Rev. Stat. 1985, ch. 127, par. 801) establishing that the State of Illinois may not be made a party in any court except as set forth in the Court of Claims Act (Ill. Rev. Stat. 1985, ch. 37, par. 439.1 *et seq.*) and defining the jurisdiction of the court as follows:

> "The court shall have *exclusive* jurisdiction to hear and determine the following matters:
>
> (a) All claims against the state founded upon any law of the State of Illinois, *or* upon any regulation thereunder by an executive or administrative officer or agency, *other than* claims arising under the Workers' Compensation Act or the Workers' Occupational Diseases Act, *or* claims for expenses in civil litigation." (Emphasis added.) Ill. Rev. Stat. 1985, ch. 37, par. 439.8.

The parties disagree as to the meaning of this language. Kadlec argues that the Court of Claims does not have exclusive jurisdiction over claims for expenses in civil litigation because the legislature intended to exclude such claims when it specifically juxtaposed them with "claims arising under the Worker's Compensation Act or the Worker's Occupational Diseases Act" after the clause "other than," and that therefore the circuit court validly exercised such authority. The IDPA, however, proposes that there are three distinct areas in which the Court of Claims has exclusive jurisdiction, the third of which is claims for expenses in litigation. According to the IDPA's interpretation, the Workers' Compensation Act or Workers' Occupational Diseases Act exceptions apply only to the second clause "upon any regulation thereunder by an executive or administrative officer or agency."

In order to ascertain which of these interpretations is correct, a brief analysis of the legislative history of this statute is helpful. Prior to 1977, section 8 of the Court of Claims Act did not cover claims for expenses in civil litigation, but simply stated:

> "The court shall have exclusive jurisdiction to hear and determine the following matters:

(a) All claims against the State founded upon any law of the State of Illinois, or upon any regulation thereunder by an executive or administrative officer or agency, other than claims arising under the Workmen's Compensation Act or the Workmen's Occupational Diseases Act." (Ill. Rev. Stat. 1975, ch. 37, par. 439.8.)

In 1977, the legislature adopted Public Act 80—1097, which amended section 8(a) by substituting a comma for the period at the end of the provision and appending the clause "or claims for expenses in civil litigation." Senator Glass explained the purpose of the amendment:

"This is an amendment to the Court of Claims Act and would allow a claim to be made against the State of Illinois just as it is permitted *** in other litigation when there are denials made by the State without reasonable cause and found to be untrue. In that case, there may be an award for expenses in an amount to compensate a party for cost actually incurred." (80th Ill. Gen. Assem., Senate Proceedings, June 23, 1977, at 327.)

Regarding the jurisdiction of the Court of Claims, a remark by Representative Tipsword is particularly enlightening:

"There is language that was inserted *** that identifies the courts that they are looking to and makes it very clear that it's the Court of Claims and not any other court." (80th Ill. Gen. Assem., House Proceedings, June 26, 1977, at 99.)

Hence, the legislative debates seem to indicate that the intent behind the new language was to append claims for civil expenses to the paragraph as a third area of exclusive Court of Claims jurisdiction.

■ Moreover, a finding that the General Assembly intended the Court of Claims to exercise exclusive jurisdiction over claims for expenses in civil litigation is reasonable when one analyzes how the legislature drafted the final or present version of section 8. It would have been incongruous for the legislature to have classified claims for expenses in litigation together with claims arising under the Workmen's Compensation Act or the Workers' Occupational Diseases Act. Clearly, these two acts are similar exceptions to the clause "any law of the State of Illinois, or upon any regulation thereunder." Since it would be illogical to interpret section 8 in a manner that would include expenses in civil litigation as an exception to laws and regulations of the State of Illinois, we believe that such expenses must be considered a subject matter in which the Court of Claims is given exclusive jurisdiction.

■■ In addition to finding that the Court of Claims has exclusive jurisdiction in this matter, we also do not believe that there exists a specific statutory basis which supports such an award. Illinois follows

the common law rule which holds that in order to recover attorney fees, the party claiming such reimbursement must show a clear statutory basis supporting the award. In *Ritter v. Ritter* (1943), 381 Ill. 549, 552-53, 46 N.E.2d 41, the supreme court stated:

> "The allowance and recovery of costs rests entirely upon statutory provisions and no liability for costs exists in the absence of statutory authorization. Any party to an action, claiming the right to recover costs from his adversary, must found his right upon some provision of a statute. *** A court of chancery may be vested with a power to exercise a discretion in awarding costs but the power to act must come from a statute and the discretion must be confined to that which is authorized by legislative enactment."

The court in *Ritter* proceeded to state the common law rule regarding fees:

> "The rule is also well established that attorney fees and the ordinary expenses and burdens of litigation are not allowable in the absence of a statute, or in the absence of some agreement or stipulation specially authorizing the allowance thereof, and this rule applies equally in courts of law and in courts of equity." (381 Ill. 549, 553, 46 N.E.2d 41.)

Moreover, the supreme court has also stated that "[s]tatutes which in general terms authorize imposing costs in various actions or proceedings but do not specifically refer to the State are not sufficient authority to hold the State liable for costs." *Department of Revenue v. Illinois Appellate Court* (1977), 67 Ill. 2d 392, 396, 367 N.E.2d 1302.

Kadlec additionally argues that statutory authority for the circuit court's order lies in the Administrative Review Act (Ill. Rev. Stat. 1985, ch. 110, par. 3—111(a)(2)), which states:

> "3—111. Powers of circuit court.
> (a) The Circuit Court has power:
> * * *
> (2) to make any order that it deems proper for the amendment, completion or filing of the record of proceedings of the administrative agency."

According to Kadlec's interpretation of section 3—111(a)(2), the legislature intended to give the circuit court wide latitude in fashioning a remedy in cases of this type when it stated that the courts may make "any order," and that "any order" logically encompasses a grant of attorney fees.

No court to date has addressed the question whether section 3—111(a)(2) provides a proper basis for the award of attorney fees. How-

ever, a close examination of the case law leads irresistibly to the conclusion that the language of section 3—111(a)(2) is not specific enough to support such an award. In *Waller v. Board of Education* (1975), 28 Ill. App. 3d 328, 329, 328 N.E.2d 604, the complainant relied on the following statutory language to support an assessment of attorney fees in a teacher dismissal case:

> "If the decision of the board is reversed upon review or appeal, on a motion of either party, the trial court shall order reinstatement and shall determine the amount for which the board is liable including but *not limited to loss of income and costs incurred therein."* (Emphasis added.) (Ill. Rev. Stat. 1971, ch. 122, par. 24—12.)

Strictly construing the statute, the court held that the provision was too vague to serve as a grant of authority for the awarding of fees:

> "The legislature has determined when attorney's fees should be awarded. It has been done with specific language such as listing 'attorney's fees' to overcome the common law rule. Where they have not used such specific language, the Courts have consistently refused to give an expanded reading to the legislative language used." *Waller v. Board of Education* (1975), 28 Ill. App. 3d 328, 331, 328 N.E.2d 604.

In a similar case, *City of Chicago v. Fair Employment Practices Com.* (1976), 65 Ill. 2d 108, 357 N.E.2d 1154, the supreme court noted that the rule that attorney fees and the ordinary expenses and burdens of litigation are not allowable to a successful party in the absence of a statute or some agreement or stipulation is equally applicable to proceedings before administrative agencies. (65 Ill. 2d 108, 113, 357 N.E.2d 1154.) The complainant relied upon statutory language which, because of the apparent sweeping power granted to the commissioner, is quite analogous to the case *sub judice*:

> "The commissioner or hearing examiner then shall state his recommendations in writing and, if he finds against the respondent, shall issue and cause to be served on such respondent and the complainant a recommended order requiring such respondent to cease and desist from the unfair employment practice complained of, and to *take such further affirmative or other actions with respect to the complainant as will eliminate the effect of the practice complained of."* (Emphasis added.) (Ill. Rev. Stat. 1973, ch. 48, par. 858.01(c).)

Nevertheless, the court ruled that "affirmative or other actions" is not specific enough to support a grant of attorney fees.

In both *Waller* and *City of Chicago*, the parties petitioning for fees

maintained that due to the expansive nature of the remedies implied in the statutory language, attorney fees must have been within the contemplation of the legislature as a permissible method of redress. The respective courts, however, rejected their arguments and held that the statutes in issue were not specific enough to justify the imposition of fees. As in the case of the statutes mentioned above, section 3—111(a)(2) cited by Kadlec also grants the circuit court broad powers to fashion remedies. Section 3—111(a)(2), however, does not specifically make any mention of attorney fees or the State. Furthermore, there is nothing in the legislative history to indicate that such fees were in the contemplation of the legislature when section 3—111(a)(2) was adopted. Hence, we hold that section 3—111(a)(2) does not provide an apt basis for such an award.

██ Finally, Kadlec argues, as indeed the trial judge in this case held, that the circuit court has general equitable authority to award attorney fees, considering that equity demands that the trial court be allowed to reimburse him for the costs of a duplicative action attributable solely to the IDPA's carelessness. An important aspect of Kadlec's request for equitable relief is the statistical evidence he has mustered in support of his assertion that the IDPA has failed repeatedly in the past to file the required transcripts of administrative hearings. Kadlec asserts that the IDPA will continue to be careless in recording hearings in the future unless the courts are given the power to stop such negligent practice. However, as sympathetic as we may be to the trial judge's impatience with what he obviously regarded as inexcusable conduct on the part of the IDPA, and mindful as we are as to how needlessly burdensome such negligence is to the aged, blind, and disabled of our State, in light of our findings that the Court of Claims has exclusive jurisdiction over the award of fees against the State and that there is not a specific statutory basis supporting such an award, we are constrained to hold that our courts are without such equitable power.

Reversed.

STAMOS and BILANDIC, JJ., concur.