MANAGEMENT ASSOCIATION OF ILLINOIS, INC., Plaintiff-Appellant, v. BOARD OF REGENTS OF NORTHERN ILLINOIS UNIVERSITY *et al.*, Defendants-Appellees.

First District (5th Division)   No. 1—92—0476

Opinion filed June 18, 1993.

Gessler, Flynn, Fleischmann, Hughes & Socol, Ltd., of Chicago (George W. Gessler and Michael J. Flaherty, of counsel), for appellant.

Sidley & Austin, of Chicago (Stephen C. Carlson and Gloria R. Mitka, of counsel), and George M. Shur, of Northern Illinois University, of De Kalb, for appellees.

PRESIDING JUSTICE GORDON delivered the opinion of the court:

Plaintiff, the Management Association of Illinois, Inc., appeals from the order of the circuit court of Cook County granting defendants' section 2—619 (Ill. Rev. Stat. 1991, ch. 110, par. 2—619) motion to dismiss plaintiff's action for damages, injunction, and other relief against defendants, the Board of Regents of Northern Illinois University, Mary Rose Hennessy, John Conrath, Daniel Hochstetter, David Murray, Sandra Pater and Sharon Young. The issue on appeal is whether the circuit court of Cook County has subject matter jurisdiction over plaintiff's claims.

On appeal, plaintiff contends that, as to all counts other than the Trade Secrets Act (Ill. Rev. Stat. 1991, ch. 140, par. 351 *et seq.*)

count, the various forms of relief sought against the Board of Regents of Northern Illinois University (injunction, accounting, constructive trust) do not affect the State's legitimate actions or subject the State to liability for damages so as to make this a suit against the State within the meaning of the Court of Claims Act (Ill. Rev. Stat. 1991, ch. 37, par. 439.1 *et seq.*). Although plaintiff seeks money damages from the Board of Regents in its Trade Secrets Act count, plaintiff contends that by the language of the Illinois Trade Secrets Act (Ill. Rev. Stat. 1991, ch. 140, par. 351 *et seq.*), the State has expressly consented to be sued for damages on claims under that act; therefore, the count seeking damages is expressly excepted from Court of Claims jurisdiction.

Defendants contend in their brief that the language of the Trade Secrets Act does not expose the State of Illinois to suit in the circuit court and that the nature of each of plaintiff's other claims or the relief sought is such that the suit is encompassed within the jurisdiction of the Court of Claims as a suit against the State of Illinois. Therefore, defendants contend that the Court of Claims has exclusive jurisdiction over all counts of the complaint.

We affirm the trial court's order of dismissal on the grounds that the Court of Claims has exclusive subject matter jurisdiction.

The complaint alleges the following facts which for purposes of the section 2—619 motion are not disputed. Plaintiff, the Management Association of Illinois, Inc. (the Association), is a not-for-profit corporation with its principal place of business in Cook County. The Association provides educational and training services to member companies and nonmember companies and assists companies in securing grants to pay for Association services. The Association contracts with independent contractors who serve as instructors.

Prior to August 19, 1991, defendant Mary Rose Hennessy was a senior vice-president for the Association. She was in charge of providing educational and training services to businesses on behalf of the Association. Prior to August 19, 1991, defendants John Conrath, Daniel Hochstetter, David Murray, Sandra Pater and Sharon Young were Association employees working under Ms. Hennessy's supervision. Conrath, Hochstetter, and Murray held management positions. The six individual defendants (Hennessy, Conrath, Hochstetter, Murray, Pater and Young) will be referred to collectively as "the Hennessy Group."

The Hennessy Group, on behalf of the Association, individually or collectively prepared and distributed workshop and course catalogs; initiated and maintained proposals and contracts for educational and

training services; designed, priced and scheduled customized on-site training and other programs; and arranged for grants to clients to fund the Association's services. In the course of their duties, the Hennessy Group had access to lists of members, clients and prospective clients and to other confidential and proprietary marketing, sales and customer information.

Defendant Board of Regents of Northern Illinois University (NIU) is charged by statute with the management, control, operation, and maintenance of NIU. (Ill. Rev. Stat. 1991, ch. 144, par. 301.) The business and industry services department of NIU competes directly with the Association in providing educational and training services to businesses.

The complaint further alleges that on August 19, 1991, the Hennessy Group notified the Association that they intended to resign from the Association to become employed by the business and industry services department of NIU. The Association then ordered the Hennessy Group to vacate the Association premises and not to remove any confidential or proprietary information. The Hennessy Group vacated the premises. Soon afterwards, the Hennessy Group began employment at NIU, where they continue to be employed.

On February 4, 1992, the Association filed suit alleging that the Hennessy Group removed from the Association its membership list, lists of clients and prospective clients, course descriptions and catalogs, contracts between the Association and its clients, education and training proposals for existing and potential clients, files concerning funding efforts by the Association on behalf of clients, and files concerning Association programs (collectively referred to as Association Property). According to the complaint, these acts were for the benefit of the Hennessy Group's new employer, NIU.

The complaint further alleges that the Hennessy Group encouraged other Association employees and instructors to leave the Association to work instead for NIU; that the Hennessy Group intentionally deleted certain courses from Association catalogs and failed to reserve space for some courses which were listed in the catalogs; that they held in abeyance some Association service proposals so that the proposals could be executed on behalf of NIU; that NIU assumed some contracts between the Association and its clients; and that funding which the Association helped clients obtain for Association services was instead used to fund NIU services to those same clients.

The complaint also states the Hennessy Group made representations which they knew to be false to clients, potential clients and instructors of the Association concerning discontinuance of certain pro-

grams and reductions in pay to instructors. The complaint further alleges that the Hennessy Group used the Association's telephones and other facilities on the Association premises to solicit business for NIU.

The complaint avers that the acts of the Hennessy Group were wilfully designed to injure the Association and to benefit NIU and that the wrongful acts began in May 1991 and were discovered sometime after August 1991. The complaint does not delineate between acts and damages which occurred while the Hennessy Group were still employed by the Association and acts and damages which occurred later.

The complaint concludes that, as a result of the Hennessy Group's wrongful acts, plaintiff has suffered, and continues to suffer, loss of customers, loss of repeat business and referrals from those customers, damage to the Association's business reputation and loss of income. Plaintiff claims NIU is the direct recipient of much of the business lost by the Association.

Count I seeks injunctive relief. As to the Hennessy Group, their agents, and anyone acting in concert with them, plaintiff requests that these persons be enjoined from the following activities: retaining, or using without the Association's written permission, any of the Association Property; soliciting or accepting business from Association clients; and encouraging Association employees to compete with the Association. In count I plaintiff also seeks restitution from the Hennessy Group members for compensation and benefits paid to them by the Association during their breach of fiduciary duty to the Association.

In count I plaintiff also requests that "defendants," encompassing NIU as well as the Hennessy Group, be enjoined from: using or destroying Association Property; inducing clients or prospective clients to do business with NIU instead of the Association; providing any services for, receiving any payments from, or maintaining any business relationship with any customer wrongfully taken from the Association; making representations concerning the business of the Association; and unfairly competing with the Association. Also, plaintiff asks that defendants be required to tender Association Property to the court.

Count II seeks an accounting by NIU of all income received by NIU as a result of the Hennessy Group's wrongful acts and application of a constructive trust as to that income.

Count III claims an intentional breach, by those in the Hennessy Group, of fiduciary duties owed to the Association by virtue of their

employment. Plaintiff seeks an injunction against "all of the defendants," prohibiting them from using Association Property, and damages of not less that $1 million from the Hennessy Group.

Counts IV, V, and VI allege the torts of unfair competition, misappropriation, and tortious interference with business relations, respectively. These counts allege that the Hennessy Group acted intentionally with the purpose of unlawfully injuring the Association and its business, property and reputation, and that the Hennessy Group "intentionally, maliciously and wilfully engaged in unfair competition by taking and misappropriating for commercial advantage the Property of the Management Association." Count VI alleges the Hennessy Group's intentional and malicious interference with business relationships, without just cause, by false representations and misappropriation of Association Property. In each of counts IV, V and VI, plaintiff seeks to enjoin "all of the defendants" from using the Association's property and seeks damages of not less than $1 million from the Hennessy Group.

In count VII, plaintiff alleges past and continuing slander by the Hennessy Group through false and disparaging statements to Association clients and prospective clients including statements that the Association has discontinued, or is discontinuing, certain programs. Plaintiff alleges that the Hennessy Group have "wilfully defamed the Management Association and injured the Management Association in its trade and business." Plaintiff asks that "all of the defendants" be enjoined from using Association Property and that the Hennessy Group pay damages of not less than $1 million.

Count VIII alleges violation of the Illinois Trade Secrets Act. Plaintiff alleges that the Association's membership list and its contracts and proposals for educational and training services are trade secrets as defined in that act (Ill. Rev. Stat. 1991, ch. 140, par. 352(d)); that each individual in the Hennessy Group owed a duty to maintain those trade secrets for Association purposes; and that they each misappropriated the trade secrets for NIU's benefit. Plaintiff states that NIU, aware of the misappropriation, acquired the trade secrets by improper means from or through the Hennessy Group and neither effected their return nor compensated the Association for the commercial advantage derived.

In count VIII, plaintiff seeks to enjoin all defendants from using the trade secrets and from doing business with any company disclosed in the trade secrets for a reasonable period of time. Plaintiff also seeks an accounting (at defendants' expense) of the Association's ac-

tual loss and NIU's unjust enrichment resulting from the misappropriation, damages and exemplary damages.

In each of counts II through VIII, plaintiff prays that the court "grant such other relief, including attorneys' fees, interest and costs, as the Court deems just and proper."

Defendants filed a motion to dismiss, pursuant to section 2—619 of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1991, ch. 110, par. 2—619), on the grounds that under the Court of Claims Act (Ill. Rev. Stat. 1991, ch. 37, par. 439.1 *et seq.*), the Court of Claims has exclusive jurisdiction over the action and, therefore, the circuit court of Cook County lacks subject matter jurisdiction. After written briefs and oral arguments, the trial court granted the motion from which this appeal now follows.

The granting of a motion to dismiss under section 2—619 is proper if no set of facts may be proven by which the plaintiff can recover. (*Campbell v. White* (1991), 207 Ill. App. 3d 541, 548, 566 N.E.2d 47.) For purposes of the motion, all well-pleaded facts alleged in the complaint are taken as true. Conclusions unsupported by specific factual allegations are not considered. Where defects do not appear on the face of the pleadings, affidavits may be filed which state affirmative matters justifying dismissal. (*Campbell*, 207 Ill. App. 3d at 547-48.) The question in this case is whether the facts stated in the complaint would support a finding that the circuit court has subject matter jurisdiction.

■ Except where the State has expressly consented to be sued or where suit is brought under the Court of Claims Act, the doctrine of sovereign immunity applies and "the State of Illinois shall not be made a defendant or party in any court." Ill. Rev. Stat. 1991, ch. 127, par. 801.

The Court of Claims Act states:

"The court shall have exclusive jurisdiction to hear and determine the following matters:

(a) All claims against the state founded upon any law of the State of Illinois, or upon any regulation thereunder by an executive or administrative officer or agency, other than claims arising under the Workers' Compensation Act or the Workers' Occupational Diseases Act, or claims for expenses in civil litigation.

(b) All claims against the state founded upon any contract entered into with the State of Illinois.
* * *

(d) All claims against the State for damages in cases sounding in tort, if a like cause of action would lie against a private person or corporation in a civil suit, and all like claims sounding in tort against \*\*\* the Board of Regents of the Regency Universities System \*\*\* provided, that an award for damages in a case sounding in tort \*\*\* shall not exceed the sum of $100,000 to or for the benefit of any claimant. \*\*\* The defense that \*\*\* the Board of Regents of the Regency Universities System \*\*\* is not liable for the negligence of its officers, agents, and employees in the course of their employment is not applicable to the hearing and determination of such claims." Ill. Rev. Stat. 1991, ch. 37, par. 439.8.

In the present case, the parties do not dispute that the Board of Regents is an agency or subdivision of the State of Illinois. That the Board of Regents is an arm or agency of the State to which the Court of Claims Act applies was established in *McGuire v. Board of Regents of Northern Illinois University* (1979), 71 Ill. App. 3d 998, 1000-01, 390 N.E.2d 632. Nevertheless, even though the Board of Regents is denominated as a defendant in the present case, plaintiff contends this is not an action against the State which mandates exclusive Court of Claims jurisdiction.

■ The determination that a claim is one against the State does not depend upon the State agency being named as a party. (*Healy v. Vaupel* (1990), 133 Ill. 2d 295, 308, 549 N.E.2d 1240.) The determination depends instead on the issues involved and the relief sought. A claim is clearly against the State where these three criteria are met:

"(1) no allegations that an agent or employee of the State acted beyond the scope of his authority through wrongful acts; (2) the duty alleged to have been breached was not owed to the public generally independent of the fact of State employment; and (3) where the complained-of actions involve matters ordinarily within that employee's normal and official functions of the State, then the cause of action is only nominally against the employee." *Robb v. Sutton* (1986), 147 Ill. App. 3d 710, 716, 498 N.E.2d 267.

Even where the three criteria above are not met, an action is deemed an action against the State if judgment for the plaintiff could either "operate to control the actions of the State or subject it to liability." *Robb,* 147 Ill. App. 3d at 713; see, *e.g., Oppe v. State of Missouri* (1988), 171 Ill. App. 3d 491, 493-94, 525 N.E.2d 1189 (suit is against State where State is obligated to defend or indemnify employee); see also *Hudgens v. Dean* (1979), 75 Ill. 2d 353, 388 N.E.2d

1242 (circuit court lacked jurisdiction in suit naming director of Department of Conservation individually where injunction required State employees to rebuild road).

COUNT I, INJUNCTION

In count I, plaintiff seeks to enjoin NIU, as well as the Hennessy Group, from use of the Association Property and from various other activities. This count involves the same conduct as that discussed below for counts IV through VIII (tortious conduct and violation of the Trade Secrets Act). Plaintiff contended in oral argument that (1) the Court of Claims has no jurisdiction to grant such equitable relief, (2) there is no present claim against the State because the injunction applies only to continuing activity, and (3) NIU cannot complain of interference with operations of the State because the injunctive relief requested extends only to unlawful activities.

The Court of Claims does have jurisdiction to grant injunctive relief. In *Fernandes v. Margolis* (1990), 201 Ill. App. 3d 47, 51, 588 N.E.2d 699, the court held that a claim of retaliatory discharge from State employment which sought injunctive relief in addition to damages was under the exclusive jurisdiction of the Court of Claims. In *Liebman v. Board of Governors of State Colleges & Universities* (1979), 79 Ill. App. 3d 89, 93, 398 N.E.2d 305, the court stated that the plaintiff's request for injunctive relief did not alter the basic nature of his complaint, which was an action against the State based on a contract. Therefore, the Court of Claims had exclusive jurisdiction.

■ For the Court of Claims to have jurisdiction to grant an injunction, the injunction must either (1) control the operations of the State (*G.H. Sternberg & Co. v. Bond* (1975), 30 Ill. App. 3d 874, 877, 333 N.E.2d 261 (intent was to enjoin all members of State government including successor director who performed no wrongful acts); see also *Hudgens v. Dean*, 75 Ill. 2d at 357 (injunction required affirmative act by State to rebuild road)) or (2) involve a present claim against the State. In *Ellis v. Board of Governors of State Colleges & Universities* (1984), 102 Ill. 2d 387, 466 N.E.2d 202, a professor claimed she had been discharged without good cause from her tenured position at a State university. She sought damages and an injunction requiring the university to reinstate her. (*Ellis*, 102 Ill. 2d at 389.) The Court of Claims had exclusive jurisdiction:

> "Because plaintiff seeks injunctive relief, in addition to money damages, does not mean, as plaintiff asserts, that her suit must be severed into two parts, that portion of the suit for

money damages being brought in the Court of Claims and the other portion being brought in the circuit court. As the appellate court correctly noted, *Bio-Medical Laboratories, Inc. v. Trainor* (1977), 68 Ill. 2d 540, stands for the proposition that if a plaintiff is not attempting to enforce a present claim against the State, but rather seeks to enjoin a State officer from taking future actions in excess of his delegated authority, then the immunity prohibition does not pertain. [Citation.] However, we agree with the appellate court that the plaintiff's suit in the instant case is clearly based upon a present claim which has the potential to subject the State to liability and thus must be brought in the Court of Claims." *Ellis*, 102 Ill. 2d at 395.

As will be demonstrated in the discussions of counts IV through VIII, those other counts involve the same conduct and do allege a present claim against the State for tortious conduct and violation of a law of the State of Illinois (Trade Secrets Act). The Court of Claims, having exclusive jurisdiction over those present claims, also has exclusive jurisdiction over the injunctive relief sought.

■ This conclusion is bolstered by the possibility that some of the acts which the Association seeks to enjoin may prohibit lawful activity by, or on behalf of, NIU. If so, the action seeks to control the operations of the State, and jurisdiction can only be with the Court of Claims. In *Betts v. Department of Revenue* (1979), 78 Ill. App. 3d 102, 396 N.E.2d 1150, the plaintiff alleged various acts by State enforcement agencies in retaliation for the filing of a lawsuit. He sought to enjoin the governor's administration from directly or indirectly taking any action affecting his property rights. (*Betts*, 78 Ill. App. 3d at 106.) The court ruled that it was an action against the State because such an injunction would curtail entirely legal prosecutions and investigations of the State as well as unconstitutional and illegal acts. *Betts*, 78 Ill. App. 3d at 108.

Count I of the complaint asks, among other things, that the Hennessy Group, their agents, and anyone acting in concert with them be enjoined from accepting business from Association clients and from encouraging Association employees to compete with the Association. Plaintiff asks that all defendants be enjoined from inducing Association clients or prospects to enter into contracts with NIU instead of the Association. The Hennessy Group, no longer employed by the Association, owes no such duty, nor does NIU owe a duty to the Association. Provided the Association Property which was allegedly misappropriated is not the means used to secure contracts with Association clients, prospective clients and employees (*e.g.*, the same

information may have been available from public documents or listings provided by another source), enjoining those activities which the Hennessy Group might lawfully undertake in the course of their employment at NIU would operate to control the State's lawful acts. Thus, the action would be against the State and the Court of Claims would have jurisdiction to hear the injunction request.

COUNT II, ACCOUNTING AND CONSTRUCTIVE TRUST

In count II plaintiff alleges that NIU has been unjustly enriched as the recipient of business and income flowing from the wrongful acts of the Hennessy Group. Plaintiff asks the court to "order an accounting by NIU of the funds obtained or to be obtained from any client or client prospects of the Management Association." Plaintiff also asks the court to impose a constructive trust on those funds for the use and benefit of the Association. Plaintiff requests attorney fees, interest and costs.

Plaintiff contends in its brief that no claim for damages is made against NIU. Rather, the accounting and constructive trust are equitable remedies sought to reimburse the Association for "funds wrongfully in possession of NIU as a result of illegal or malicious conduct." Plaintiff contends that even if a constructive trust has an indirect effect of requiring payment from the State treasury, the Court of Claims does not have jurisdiction to grant such equitable relief.

The Court of Claims' jurisdiction is not limited to monetary claims. (*G.H. Sternberg & Co.*, 30 Ill. App. 3d at 878.) The Court of Claims is not without authority to grant equitable relief. See *Ellis*, 102 Ill. 2d at 395 (Court of Claims jurisdiction where injunctive relief is sought and there is a present claim which may subject State to liability); *Magna Trust Co. v. Department of Transportation* (1992), 234 Ill. App. 3d 1068, 600 N.E.2d 1317 (jurisdiction in Court of Claims although remedy sought is specific performance); *Brucato v. Edgar* (1984), 128 Ill. App. 3d 260, 470 N.E.2d 615 (Court of Claims has exclusive jurisdiction where remedy sought was accounting and appointment of trustee).

Plaintiff relies on *City of Springfield v. Allphin* (1978), 74 Ill. 2d 117, 384 N.E.2d 310, in contending that the circuit court has jurisdiction to impose a constructive trust on funds wrongfully in the possession of a State agency. In *Allphin*, the Department of Revenue collected taxes on behalf of various municipalities and paid the taxes over to the municipalities while keeping a portion of the funds as fees for administration. (74 Ill. 2d at 121-22.) The Director of Revenue, believing that a statute amending the formula for calculating fees had

not yet become effective, erroneously retained too much money in fees for the State. The municipalities sought a declaratory judgment in the circuit court as to the amendment's effective date and reimbursement of amounts erroneously withheld. (*Allphin*, 74 Ill. 2d at 122.) The Illinois Supreme Court noted the presumption that the State does not violate the constitution and laws of the State, but if such violation occurs, it is by the State officer and therefore a suit to compel the officer to disburse appropriated funds according to law is not an action against the State. The court stated:

> "[T]he issues involved in the instant case (the effective date of a statute) and the relief requested (a declaratory judgment and the withholding of certain funds from the State treasury) do not render the instant case a suit against the State. That the relief requested necessarily will have an impact on the State's General Revenue Fund is not dispositive." *Allphin*, 74 Ill. 2d at 126.

The court went on to stress the fiduciary relationship between taxing authorities, *i.e.*, between municipalities which assess the taxes and the State government which acts as collection agent. The concern of the court was to provide an adequate forum to municipalities to recover taxes wrongfully withheld by a government official acting in excess of statutory authority. See *Allphin*, 74 Ill. 2d at 127.

*Allphin* is distinguishable from the present case. The present case does not involve taxes as *Allphin* did. No fiduciary relationship exists between NIU and the Association such as the fiduciary relationship between taxing bodies. Furthermore, *Allphin* was a declaratory judgment action much like a *mandamus* action in that the wrong allegedly committed was an official's failure to perform a ministerial act mandated by statute. The conduct for which the constructive trust is sought in the present case was tortious conduct regulated by common law rather than statute and involved, not ministerial acts, but discretionary acts on the part of a State agency.

*Brucato v. Edgar* (1984), 128 Ill. App. 3d 260, 470 N.E.2d 615, is analogous to the present case. In *Brucato*, the Secretary of State entered into a collective bargaining agreement which allowed for different rates of pay based on whether an employee worked in Cook County or downstate Illinois. (128 Ill. App. 3d at 262.) Section 10a of the Secretary of State Merit Employment Code (Ill. Rev. Stat. 1981, ch. 124, par. 110a) authorized area differentials. (*Brucato*, 128 Ill. App. 2d at 265.) A downstate employee claimed the area differentials used in the agreement were unconstitutional in that they were arbitrary and discriminatory, denying her due process and equal protec-

tion. (*Brucato*, 128 Ill. App. 3d at 262.) She also claimed that the Secretary of State acted in excess of his authority in entering into the agreement. The plaintiff claimed the suit was not an action against the State, but an action to compel the Secretary of State to perform his duties under the law and to enjoin him from acting in excess of his authority. (*Brucato*, 128 Ill. App. 3d at 264.) The relief sought was an accounting of salary differentials with accrued interest over the preceding 10 years and appointment of a trustee to administer payment of the calculated amounts to downstate employees.

The court in *Brucato* stated:

"[W]hile it is true that an action to restrain a State official from acting in contravention of the law or exceeding his authority thereunder is not considered to be against the State [citation], it is well settled that where the action seeks to control the officer's conduct in governmental matters with respect to which he has been granted discretionary authority [citation], and if a judgment for plaintiff could operate to control the actions of the State or subject it to liability, it will be deemed an action against the State even though it is not a named party therein [citations]." (*Brucato*, 128 Ill. App. 3d at 264.)

The court found that the relief sought was, in effect, a money judgment subjecting the State to liability and, therefore, the Court of Claims had exclusive jurisdiction:

"Furthermore, although plaintiff's prayer for relief is framed in equitable terms, it is apparent from reading of the complaint in its entirety that the principal relief sought is a monetary judgment for the difference between the wages paid to her and those paid to Cook County personnel pursuant to the collective bargaining agreements in effect throughout the last decade; indeed, plaintiff acknowledged both in her brief and in arguments before us that essentially she is seeking to be recompensed for those wage discrepancies. Thus, notwithstanding the terminology employed in the pleadings, the present action is substantively a claim for monetary damages from the State arising from a contract with the State. As such, it is within the exclusive jurisdiction of the Court of Claims, and the mere fact that equitable relief in the form of an accounting and appointment of a trustee is also sought does not alter the basic nature of the suit, inasmuch as an order granting such relief clearly would be dependent upon and incidental to a preliminary finding that plaintiff is entitled to a judgment for damages and would

merely serve as the vehicles by which to calculate and distribute the amount due her thereunder.

Moreover, we find nothing in the language of the Court of Claims Act—nor in the case law interpreting it—which 'strictly limits' jurisdiction of that Court to monetary claims. To the contrary, section 8 provides that the Court shall have exclusive jurisdiction to hear and determine '(a) *all claims* against the state founded upon any law of the State of Illinois,' and '(b) *all claims* against the state founded upon any contract entered into with the State of Illinois.' (Emphasis added.) (Ill. Rev. Stat. 1981, ch. 37, pars. 439.8(a), (d).) It appears therefrom—and cases have held—that it is the nature of the action, *i.e.,* whether it is one against the State, as well as the relief sought, which determines whether jurisdiction is in the Court of Claims." *Brucato,* 128 Ill. App. 3d at 267-68.

■ Just as the plaintiff in *Brucato* claimed the suit was not one against the State because the Secretary's acts were in excess of his authority and pursuant to an unconstitutional statute, the Association contends that this is not an action against the State because the Hennessy Group's acts were intentional, malicious and illegal. In *Brucato,* the court disregarded the plaintiff's contention that the State official acted in excess of his authority, even though it was alleged that he acted pursuant to an unconstitutional statute. The relief sought by the Association, an accounting and constructive trust, is at its core indistinguishable from the relief sought in *Brucato.* Although equitable terminology is used, this action, like *Brucato,* in effect seeks a monetary judgment from the State. It can also be noted that in count II of the complaint, plaintiff asks that attorney fees and costs be awarded. An award of fees and costs against the State is also under the exclusive jurisdiction of the Court of Claims. See Ill. Rev. Stat. 1991, ch. 37, par. 439.8(a); see also *Kadlec v. Department of Public Aid* (1987), 155 Ill. App. 3d 384, 508 N.E.2d 342 (interpreting that statute and providing legislative history as to intent).

COUNT III, BREACH OF FIDUCIARY DUTY; AND
COUNTS IV, V, VI AND VII, TORTIOUS CONDUCT

Count III alleges breach by individuals in the Hennessy Group of a fiduciary duty owed by them to the Association. Counts IV through VII allege various torts (unfair competition, misappropriation, tortious interference with business relations, and slander). Plaintiff contends each of these five counts is directed at the Hennessy Group, not NIU. However, no distinction is drawn in the complaint as to which wrong-

ful conduct occurred during the Hennessy Group's employment with the Association and which wrongful conduct occurred after the Hennessy Group became employed by NIU. Neither is any division of damages made in the complaint. To the extent that the wrongful conduct occurred after the Hennessy Group became employed at NIU and within the scope of their NIU employment, the claims can be considered claims against the State rather than against the Hennessy Group individually.

Furthermore, to the extent the wrongful activity was undertaken by the Hennessy Group as agents of NIU before they became formally employed at NIU, the action might also be considered to be one against the State. In *Peccarelli v. State of Illinois* (1978), 32 Ill. Ct. Cl. 105, an attorney sued to recover money due for services rendered under his contract with an attorneys' association. The association had contracted with the attorney for consulting services in connection with a project for which the association had received a grant from the Illinois Law Enforcement Commission (Commission), a State agency. (*Peccarelli*, 32 Ill. Ct. Cl. at 106.) The State argued that the Court of Claims did not have jurisdiction because the action was not based on a contract entered into by the State. The court noted that the Commission had authorized the hiring of the attorney and the association had been bound by fiscal guidelines published by the Commission. (*Peccarelli*, 32 Ill. Ct. Cl. at 108.) The Court of Claims found it had jurisdiction because the association was acting as agent of the State and acted on behalf of the State in entering into the contract.

In the present case, plaintiff has alleged throughout the complaint that the Hennessy Group acted for the benefit of NIU even before they left the Association's employ. Plaintiff has alleged that Association Property was used to solicit business for NIU and that NIU assumed contracts formerly executed between the Association and its clients. Assuming these facts to be true, an agency relationship existed between the Hennessy Group and NIU before their formal employment at NIU, which could subject the State to liability for the damages sought in counts III through VII.

In its brief, plaintiff contends that counts IV through VII cannot be construed as claims against the State because the nature of the tortious conduct takes the Hennessy Group's acts outside the scope of their employment for NIU. Plaintiff notes that it is presumed the State cannot violate the law or act in an intentional or malicious manner. Throughout the complaint, plaintiff alleges that the wrongful acts of the Hennessy Group were intentional or knowing, wilful, malicious and with the intent to unlawfully injure plaintiff. The question is (a)

whether the acts of this nature are outside the scope of employment making the action one against individual employees rather than the State, and (b) if so, whether plaintiff has pleaded facts which support those conclusions.

In *City of Springfield v. Allphin* (1978), 74 Ill. 2d 117, 384 N.E.2d 310, the court noted the existence of a presumption " 'that the State, or a department thereof, will not, and does not, violate the constitution and laws of the State, but that such violation, if it occurs, is by a State officer or the head of a department of the State, and such officer or head may be restrained by a proper action instituted by a citizen.' " (74 Ill. 2d at 124, quoting *Schwing v. Miles* (1937), 367 Ill. 436, 441-42; but see *Brucato v. Edgar* (1984), 128 Ill. App. 3d 260.) Plaintiff makes no claim of constitutional violation. Plaintiff did argue below, however, that the tortious acts alleged were unlawful and, therefore, the presumption should apply. Also, plaintiff in its Trade Secrets Act count claims violation of a statute.

Clearly, the violation of *any* statute cannot mandate that the action is not against the State. If that were so, section 8(a) of the Court of Claims Act, which grants jurisdiction over "[a]ll claims against the state founded upon any law of the State of Illinois" (Ill. Rev. Stat. 1991, ch. 37, par. 439.8(a)), would grant jurisdiction over little or nothing. In *Ellis v. Board of Governors of State Colleges & Universities* (1984), 102 Ill. 2d 387, 394, 466 N.E.2d 202, the plaintiff contended that violation of a statute providing for dismissal only for good cause took the case out of the exclusive jurisdiction of the Court of Claims. The court found that claimed violation of the statute put the case precisely within the wording of section 8(a) of the Court of Claims Act. *Ellis*, 102 Ill. 2d at 395.

The cases which apply the presumption stated in *Allphin* seem to deal with violations of nondiscretionary statutory duties or procedures. These cases involved actions for *mandamus*, declaratory judgment and injunctive relief to compel compliance or prevent noncompliance with a statute or agency regulation. See *Senn Park Nursing Center v. Miller* (1984), 104 Ill. 2d 169, 470 N.E.2d 1029 (*mandamus* to compel computation and payment under existing valid procedure instead of invalid procedure established by official); *Allphin*, 74 Ill. 2d at 117 (declaratory judgment suit to compel application of statutory formula for withholding of funds); *County of Cook v. Ogilvie* (1972), 50 Ill. 2d 379, 280 N.E.2d 224 (injunctive relief to compel payments of allocated funds according to statute); *Fernandes v. Margolis* (1990), 201 Ill. App. 3d 47, 588 N.E.2d 699 (violation of administrative rule providing for notice and hearing before discharge); *Farmer v. Mc-*

*Clure* (1988), 172 Ill. App. 3d 246, 526 N.E.2d 486 (*mandamus* and injunction to compel certification of employee to position in accordance with agency regulation); *Board of Education of Township High School District No. 206 v. Cronin* (1979), 69 Ill. App. 3d 472, 388 N.E.2d 72 (suit to compel State Superintendent of Education to comply with school bus reimbursement statute).

Clearly, mere tortious conduct, without further delineation, cannot qualify as unlawful so as to trigger the presumption in *Allphin*. Otherwise, section 8(d) of the Court of Claims Act, dealing with tort claims against the State, would have no effect. Negligence claims are clearly within the Act. Acts which are outside the scope of the State employee's authority would not be under exclusive Court of Claims jurisdiction unless those acts could result in the imposition of liability on the State or control of its actions. (See *Betts v. Department of Revenue*, 78 Ill. App. 3d at 107; see also *Campbell*, 207 Ill. App. 3d at 551.) Intentional and wilful conduct is not necessarily beyond the scope of authority. See *Campbell*, 207 Ill. App. 3d at 551; see also *Robb*, 147 Ill. App. 3d at 714 (allegations of recklessness, which connotes wilful and wanton behavior, insufficient to show defendant acted outside his authority).

Plaintiff contends, however, that malicious conduct is outside the scope of a State employee's authority. Plaintiff relies on *Hoffman v. Yack* (1978), 57 Ill. App. 3d 744, 748, 373 N.E.2d 486, for this contention. We agree with the legal contention that malice, if well pleaded, is outside the scope of a State employee's employment. However, plaintiff has failed to adequately plead malicious conduct by the Hennessy Group.

Malice has been defined as "[t]he intentional doing of a wrongful act without just cause or excuse, with an intent to inflict an injury or under circumstance that the law will imply an evil intent." (Black's Law Dictionary 862 (5th ed. 1979).) In *Hoffman*, the court found a university department supervisor acted outside the scope of his authority when he made false accusations of a professor's incompetency, racist views, lack of integrity and aberrant sexual behavior. (*Hoffman*, 57 Ill. App. 3d at 746.) While the facts alleged in *Hoffman* could be construed as prompted by personal animosity, that case made no distinction between malicious acts which were motivated by personal animosity and those motivated by furtherance of the employer's business.

In *Nikelly v. Stubing* (1990), 204 Ill. App. 3d 870, 562 N.E.2d 360, the court made that distinction. The plaintiff alleged intentional and unjustified interference with his employment contract and intentional

infliction of emotional distress by his supervisor with the intent to coerce the plaintiff to retire. (*Nikelly*, 204 Ill. App. 3d at 871-73.) The court found the supervisor's acts were within the scope of his authority because there were no facts alleged which showed personal animosity or acts committed for any purpose other than what he perceived to be the best interests of the agency which employed him. Thus, the action was one against the State. *Nikelly*, 204 Ill. App. 3d at 876.

The approach used in *Nikelly* is in line with *respondeat superior* doctrine in private sector cases. In *Bremen State Bank v. Hartford Accident & Indemnity Co.* (7th Cir. 1970), 427 F.2d 425 (a private sector case), the Seventh Circuit Court of Appeals wrote:

> "Our reading of the cases leads us to conclude that the rule in Illinois is that the employer is liable for the negligent, wilful, malicious, or criminal acts of its employees when such acts are committed during the course of employment and in furtherance of the business of the employer; but when the act is committed solely for the benefit of the employee, the employer is not liable to the injured third party." *Bremen State Bank*, 427 F.2d at 428.

Section 8(d) of the Court of Claims Act gives the Court of Claims jurisdiction over claims against the State which sound in tort "if a like cause of action would lie against a private person or corporation in a civil suit." (Ill. Rev. Stat. 1991, ch. 37, par. 439.8(d).) It is in keeping with the statute to distinguish between malicious acts for one's own purposes and those believed by the employee to be in furtherance of the State employer's purposes.

The facts alleged in the Association's complaint certainly indicate intentional acts. Plaintiff's conclusory statements as to the Hennessy Group's malicious conduct and intent to injure plaintiff, however, are not supported by specific facts which, if proven, would show malicious conduct. Furthermore, the facts alleged are consistent with an intent to further the business of the Hennessy Group's employer, NIU, which acts can be considered within the scope of employment. For these reasons, the tort claims in counts IV through VII are properly viewed as claims against the State for damages sounding in tort.

With respect to the count III breach of fiduciary duty claim, the allegations, as those in counts IV through VII, encompass the entire course of conduct preceding and succeeding the Hennessy Group's departure from the Association and commencement of their employment at NIU. While the theory upon which recovery is sought is for breach of a fiduciary duty, which would presumably apply only to employees

and fiduciaries, there is no attempt to differentiate between the acts prior to the Hennessy Group's departure from the Association and acts subsequent thereto. Plaintiff nevertheless argues that, because the theory of recovery is for breach of fiduciary duty, one may assume that NIU can have no liability thereunder.

■ There are, however, three problems with that assumption. First, plaintiff's allegation that the Hennessy Group's wrongful conduct was undertaken for the benefit of NIU implies that the Hennessy Group acted as NIU's agent even before leaving the Association, *i.e.*, in the period during which the Hennessy Group allegedly owed a fiduciary duty to plaintiff. If so, as is the case under the tortious conduct counts, NIU could be subject to liability under count III based on an agency theory. See *Peccarelli*, 32 Ill. Ct. Cl. at 108.

Secondly, even without allegations of agency, plaintiff has not isolated in its complaint the conduct occurring during the Hennessy Group's employment with the Association or the damages restricted to that period. Moreover, the damages encompassing the entire course of conduct appear to be inextricably intertwined and, therefore, not subject to such isolation. There is no way, based on the complaint, to identify conduct and damages during the brief period prior to the Hennessy Group's departure from the Association.

Finally, count III seeks attorney fees and costs from all defendants, including NIU. Absent a specific statutory provision to the contrary, fees and costs can only be awarded against NIU in the Court of Claims. See *Kadlec*, 155 Ill. App. 3d at 387-88.

For these reasons, plaintiff's assumption that the State can have no liability under count III is incorrect. The Court of Claims has jurisdiction over count III as well as counts IV through VII.

COUNT VIII, VIOLATION OF THE ILLINOIS TRADE SECRETS ACT

■ Count VIII alleges violation of the Illinois Trade Secrets Act. The Act provides for injunctive relief and damages based on misappropriation of trade secrets. (Ill. Rev. Stat. 1991, ch. 140, par. 351 *et seq.*) The Act's definition of "trade secret" includes, among other things, technical and nontechnical data, methods, techniques, financial data, and lists of actual or potential customers or suppliers if such information is sufficiently secret to derive actual or potential economic value and is the subject of reasonable efforts to maintain its secrecy or confidentiality. (Ill. Rev. Stat. 1991, ch. 140, par. 352(d).) Misappropriation includes acquisition of a trade secret by improper means (including breach of, or inducement to breach, a confidential relation-

ship) and unauthorized disclosure or use of a trade secret. Ill. Rev. Stat. 1991, ch. 140, par. 352(b).

The Act states that, with certain exceptions, the Act is "intended to displace conflicting tort, restitutionary, unfair competition, and other laws of this State providing civil remedies for misappropriation of a trade secret." (Ill. Rev. Stat. 1991, ch. 140, par. 358(a).) The exceptions listed include contract remedies, criminal remedies, civil remedies not based on trade secret misappropriation, and other statutory definitions of "trade secret." Ill. Rev. Stat. 1991, ch. 140, par. 358(b).

In its brief, plaintiff contends that the Trade Secrets Act encompasses a governmental entity of the State just as it encompasses any other entity. Plaintiff bases this contention on the Act's definition of "person," which includes "government, governmental subdivision or agency" (Ill. Rev. Stat. 1991, ch. 140, par. 352(c)), and upon the Act's failure to specifically mention sovereign immunity or Court of Claims jurisdiction. Plaintiff argues that because the Act encompasses State governmental entities and does not list sovereign immunity as an exception, it subjects the State to liability under the Act. Therefore, plaintiff argues, State liability under the Trade Secrets Act supersedes the earlier statutory provision of sovereign immunity and the Court of Claims Act. Thus, plaintiff contends, the State has consented through the Trade Secrets Act to assume general full liability in the circuit court, unmodified by the Court of Claims Act or sovereign immunity. We disagree.

The exceptions listed in section 8 of the Trade Secrets Act deal with remedies rather than liability; they are theories of action, not immunities or defenses which would preclude the imposition of liability. Therefore, the absence of sovereign immunity in the listed exceptions does not mean the legislature intended sovereign immunity to be waived in Trade Secrets Act suits. Plaintiff cited no case which subjected the State to liability in a circuit court under the Trade Secrets Act.

Defendants argue that, had the legislature intended the State to be subject in a circuit court to liability under the Trade Secrets Act, the Act would have explicitly so stated. Therefore, defendants contend, the State is protected by the sovereign immunity doctrine as to forum and jurisdiction is exclusively with the Court of Claims. The Trade Secrets Act is silent on the subject of sovereign immunity and on the subject of a proper forum for suits under the Act. The Court of Claims Act, however, grants exclusive jurisdiction to the Court of Claims for "[a]ll claims against the state founded upon *any* law of the

State of Illinois." (Emphasis added.) Ill. Rev. Stat. 1991, ch. 37, par. 439.8.

We find the defendants' position more tenable, interpreting the Trade Secrets Act's silence on the subject as a legislative intent that the Court of Claims Act should apply in actions against the State under the Trade Secrets Act.

In *Byron v. Village of Lyons* (1986), 148 Ill. App. 3d 1057, 1058, 500 N.E.2d 449, the plaintiff filed a tort action against the Village of Lyons. The village filed a third-party action for contribution against the Department of Children and Family Services (DCFS), a State agency. The village argued that because the Contribution Among Joint Tortfeasors Act made no mention of sovereign immunity, the doctrine did not apply to that act. The court affirmed the trial court's dismissal for lack of subject matter jurisdiction. (*Byron*, 148 Ill. App. 3d at 1058.) The court stated:

> "We also note that the filing of third-party suits for contribution in pending actions, authorized by the Contribution Among Joint Tortfeasors Act [citation] and relied upon by the village, does not expressly exclude contribution claims against the State from falling within the doctrine of sovereign immunity. Therefore, the State's consent to such a suit would have to be implied. It has been held that legislative consent to suit against the State cannot be implied when there is an express statutory provision to the contrary. *** [L]egislative consent must be clear and unequivocal; it cannot be inferred [citation]. The Court of Claims Act expressly grants jurisdiction to that court in cases against the State grounded in tort; the Contribution Among Joint Tortfeasors Act is silent on the subject. Therefore, the expressed legislative intent places jurisdiction for this case in the Court of Claims." *Byron*, 148 Ill. App. 3d at 1060.

By analogy, the Court of Claims Act expressly grants jurisdiction to the Court of Claims for "claims against the state founded upon any law of the State of Illinois" and the Trade Secrets Act is silent on the subject. Therefore, jurisdiction is in the Court of Claims for claims against the State under the Trade Secrets Act. Count VIII of plaintiff's complaint alleges NIU's misappropriation of trade secrets and seeks damages, exemplary damages, attorney fees and costs from NIU. It is a present claim against the State, subject to the exclusive jurisdiction of the Court of Claims. The circuit court lacks subject matter jurisdiction over the claims in count VIII.

This conclusion is bolstered by the absence of any mention of sovereign immunity in section 5 of the Trade Secrets Act. (Ill. Rev. Stat. 1991, ch. 140, par. 355.) Section 5 of the Act authorizes an award of attorney fees and costs to the prevailing party. In *Kadlec v. Department of Public Aid,* the court stated that statutes which authorized awards of costs in general terms without specific reference to the State are not sufficient to hold the State liable for such costs. (*Kadlec v. Department of Public Aid,* 155 Ill. App. 3d at 388, quoting *Department of Revenue v. Appellate Court of Illinois, First District* (1977), 67 Ill. 2d 392, 396, 367 N.E.2d 1302.) It seems likely that if the legislature intended sovereign immunity to be inapplicable under the Trade Secrets Act, it would have specified in section 5 that fees and costs could be assessed against the State.

For the foregoing reasons, the judgment of the trial court is affirmed.

Judgment affirmed.

MURRAY and McNULTY, JJ., concur.